EVELY, APPELLANT, *v.*
CARLON COMPANY, DIV. OF INDIAN HEAD, INC., APPELLEE.

[Cite as Evely *v.* Carlon Co. (1983), 4 Ohio St. 3d 163.]

(No. 82-510—Decided April 20, 1983.)

*Mr. Forrest W. Burt,* for appellant.

*Spieth, Bell, McCurdy & Newell Co., L.P.A.,* and *Mr. Ron Tonidandel,* for appellee.

*Per Curiam.* In his first proposition of law, the appellant argues that the appellee, through its officers, made defamatory statements about the appellant and that such statements were made with malice; and that it was error for the trial court to have granted the appellee's motion for summary judgment in the absence of an evidentiary showing that such statements were made in good faith.

At the outset, it must be pointed out that all of the statements attributed to the officers of the appellee were made concerning the activities of the appellant arising out of his employment status with the company. None of these statements was directed to the appellant as an individual separate and apart from his employment. As such, the statements would be afforded a qualified privilege concerning matters of common business interest between the parties and, accordingly, there must be a showing that they were made with actual malice in order for the appellant to prevail. In this regard there must be evidence adduced by the appellant beyond the mere allegations contained in the complaint.

The general principles applicable to qualified privilege were set forth in *Hahn* v. *Kotten* (1975), 43 Ohio St. 2d 237 [72 O.O.2d 134], an action in slander brought by an insurance agent against the insurance company he formerly represented. The alleged defamation in *Hahn* was correspondence by the company to policyholders, stating that the plaintiff had been terminated as an agent of the company and that the company questioned the capability of the plaintiff to perform as an insurance agent. This court held that the company had a qualified privilege to publish such material because it had a business right to protect, and held that a directed verdict for the defendant was proper since there was no showing by the plaintiff that the defendant acted with "actual malice."

*Hahn, supra,* was later cited and followed in *Costanzo* v. *Gaul* (1980), 62 Ohio St. 2d 106 [16 O.O.3d 134], in which this court upheld the trial court's granting of a directed verdict to the defendant city councilman in an action for slander brought by a real estate developer concerning statements made by the councilman relating to certain commercial building zoning sought by the plaintiff.

Although *Hahn* and *Gaul* involved cases withdrawn from the jury by way of a directed verdict, the same basic standard may be applied here to a granting of a motion for summary judgment. As correctly stated in the majority opinion in the court of appeals:

"Appellant conceded in his complaint that appellee made the allegedly defamatory statements 'within the scope of employment.' (Complaint, Item

166

37; Amended Complaint, Item 36). Thus, a qualified privilege arose, and it was imperative that appellant show actual malice to defeat the privilege and justify a trial on the merits. Once appellee asserted the defense that its statements were made in good faith, appellant had the burden of showing that appellee acted with actual malice and could not merely rely on allegations in the complaint.''

Here, a review of the material before the trial court upon the motion for summary judgment which included the allegations in the complaint and amended complaint, the answer, the exhibits, the interrogatories (sets one and two) and answers thereto, would show that the appellant had not sustained his burden of proof of malice in the publication of such alleged actionable defamations. In such material there was no showing of any ill will, spite, or some ulterior motive on the part of appellee's officers toward this appellant. On the contrary, the materials presented would show that while the appellant's employment performance was at one time quite satisfactory, the situation materially changed occasioning a showing of dissatisfaction on the part of management for such performance.

In support of its position that the determination to remove the appellant from his position of management was based upon a business analysis rather than a motive of ill will, the appellee submitted the following significant answers to the appellant's Interrogatory No. 1 (First Set) and appellant's Interrogatory No. 9 (Second Set):

"ANSWER TO [PLAINTIFF'S] INTERROGATORY NO. 1 [FIRST SET]:

"Plaintiff was terminated because he was not a good employee. Various comments in plaintiff's appraisal file since 1974 indicated problem areas concerning plaintiff's performance — this file had been furnished to plaintiff pursuant to his Request for Production of Documents. In a memo of October 25, 1977, which has been furnished to plaintiff, Carlon's President stated 'I am sick and tired of the high turnover at the Aurora location. It illustrates poor interviewing, non-consistent management, and low morale. In case Bill Evely does not realize it, high turnover is a sign of poor plant management.' In a memo of January 30, 1978, which has been furnished to plaintiff, Carlon's President stated 'Our problems at Aurora are clearly indicated by the attached turnover list. Obviously we can't go on like this and have an organization with any morale.' In a memo of March 31, 1978, which has been furnished to plaintiff, Carlon's President stated that the plaintiff's change of heart after plaintiff had resigned was disturbing because 'This man cannot get along with anyone in the organization, doesn't follow instructions well, has the lowest morale plant in our system, the highest turnover, and has shown every sign of being unbalanced. I cannot risk this kind of personality on the Carlon team.' In a memo to plaintiff of May 5, 1978, plaintiff's supervisor stated 'Furthermore, you let your disappointment be known by sulking throughout the remainder of the session. This is unbecoming of a mature manager and disrespectful of the parties present. I recognize the difficulties

in running any of Carlon's plants but you are making it even more difficult by trying to manage Aurora by coercion and intimidation. You have been counselled in the past about placing unreasonable pressures on subordinates. Exercising control is one thing; expecting total subservience is quite another. Please take a hard look at your objectives and see if these are compatible with Carlon's.' All of this indicated a continuing deterioration in plaintiff's attitude and conduct, culminating in a letter of May 5, 1978, from plaintiff and other supervisory employees of Carlon's Aurora plant to the President of Indian Head, Inc., whereby plaintiff ignored all normal and established channels of communications between himself, his immediate supervisors, and all Carlon management. This was the straw that broke the camel's back and plaintiff was terminated."

"PLAINTIFF'S INTERROGATORY NO. 9 (SECOND SET):

"9 * * * Insofar as the 3/31/78 Memorandum from J. E. Dawson to A. L. Coldiron, attached hereto, please respond to the following:

"(a) Who [sic] did Mr. Evely not get along with?

"(b) What instructions did Mr. Evely not follow? Please be specific as to the dates and the substance of the instruction and what Mr. Evely did or not do in failing to follow such instructions?

"(c) What facts did Mr. Dawson rely on in stating that Aurora had the 'lowest morale' of any plant in the Carlon system?

"(d) What facts was Mr. Dawson aware of in coming to the conclusion that the Plaintiff was 'unbalanced'? Please provide specific dates of any incidents that indicated same to Mr. Dawson?"

"ANSWER TO PLAINTIFF'S INTERROGATORY NO. 9 (SECOND SET):

"(a) His own staffing — he had a high turnover rate. Also, he could not relate to management or take recommendations on how his plant should operate.

"(b) He did not report to me. My comments on his not following instructions relate to the complaints of his supervisors and service departments at Carlon. He was insubordinate and for this reason finally was discharged.

"(c) High turnover, union problems, grievances, and how they were handled (highest number in our system). The Carlon plant at Aurora was (isn't now) the lowest morale plant in the Carlon system. Grievances are not now a problem, since the plaintiff is no longer there.

"(d) Taping all meetings (which isn't typical in our business), high Aurora turnover rate, resigning without notice — then changing his mind, his demeaning attitude at his Aurora staff meetings, and poor handling of grievances."

The appellant submitted nothing to the trial court to controvert such statements of the appellee concerning the reasons for the termination of appellant. He opted instead to rely upon the allegations of his amended complaint. This he could not do and successfully sustain his position in the face of the appellee's motion for summary judgment. In *Temple* v. *Wean United, Inc.*

(1977), 50 Ohio St. 2d 317 [4 O.O.3d 466], this court described the criteria which must be satisfied under Civ. R. 56, as follows, at 327:

"Civ. R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party."

Accordingly, we are in agreement with the trial court and the court of appeals on this issue.

The appellant's proposition of law number two avers that the appellee had violated R.C. 4101.17(B), which section prohibits the discrimination by employers against their employees because of age. Within this context, the appellant alleged that he had been discharged without cause and solely upon the basis that he was over the age of forty years.

Upon this issue, again the appropriate test to be applied is whether, upon motion for summary judgment pursuant to Civ. R. 56, the appellant submitted sufficient supportive materials in support of the allegation of dismissal on the basis of age to present a genuine issue for trial. We find that he did not. First, it must be remembered that the employment of appellant by appellee was terminable at will by either party, there being no specific employment contract. However, more importantly for purposes of determining the motion for summary judgment, the materials before the trial court showed that appellant's employment had been terminated by appellee on May 8, 1978, for just cause for the reasons found in the answers to the interrogatories which stated that such termination was a result of appellant's actions and conduct which were detrimental to his employer.

The appellant did not submit any material to be considered by the trial court upon appellee's motion for summary judgment which would have controverted the reasons given by appellee for appellant's discharge. The appellant merely states that whether there was just cause for his discharge is a jury question. The trial court and the court of appeals found that no such issue was raised by appellant for jury consideration. With those determinations, we agree.

The appellant urges in his third proposition of law that his discharge was also based upon his awareness and protest of certain rail transit rates utilized by appellee, which rates were claimed by appellant to be in violation of federal tariff laws. Appellant asserts that a discharge upon such a basis would provide an exception to the general principle of Ohio law that employment in instances where there is no contract is terminable at will by the parties. Such exception, the appellant argues, is based upon public policy. We need not specifically address this argument here for a number of reasons. The record demonstrates that upon appellee's motion for summary judgment the appellant rested upon the allegations in his pleading relative to the ex-

istence of any such alleged violation by appellee of any tariff rates, and came forward with nothing supportive of his claim that he had been terminated from his employment for his knowledge of, and objection to, such rates. All of the appellant's claims in this regard were based upon innuendo and inference, and were not sufficient to withstand a motion for summary judgment. We are also in agreement with the trial court and the court of appeals on this issue.

Based on all of the foregoing, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., STEPHENSON, SWEENEY, LOCHER, HOLMES, C. BROWN, and GREY, JJ., concur.

STEPHENSON, J., of the Fourth Appellate District, sitting for W. BROWN, J.

GREY, J., of the Fourth Appellate District, sitting for J.P. CELEBREZZE, J.