### Lineken
### v.
### Marathon Oil Co.
*[Cite as 2 AOA 127]*

*Case No. 5-86-49*
*Hancock County, (3rd)*
*Decided March 29, 1990*

*R.C. 4101.17*

*Messrs. Robison, Curphey & O'Connell, Mr. David W. Stuckey, Mr. C. Philip Baither, III, Attorneys at Law, Ninth Floor, Four SeaGate, Toledo, Ohio 43504, For Appellant.*

*Messrs. Betts, Miller & Russo, Mr. Stephen C. Betts, Attorney at Law, 101 1/2 West Sandusky Street, Findlay, Ohio 45840, For Appellant.*

*Mr. Garver Oxley, Mr. Robert B. Hollister, Attorney at Law, 301 E. Main Cross Street, P.O. Box 1086, Findlay, Ohio 45840, For Appellees.*

*Mr. Joseph A. Simmons, Attorney at Law, 539 South Main Street, Findlay, Ohio 45840, For Appellees.*

EVANS, J.

This is an appeal from a judgment of the Court of Common Pleas of Hancock County sustaining a motion for summary judgment and granting judgment in favor of appellees, J. R. Neds, J.W. Neds, J.W. Maxie and the Marathon Oil Company and against appellant, Barrie Lineken.

Barrie Lineken (Lineken), appellant, was hired by the Marathon Oil Company (Marathon), appellee, on June 1, 1966 as a pilot. Lineken steadily advanced through Marathon's various flight levels until he reached the status of pilot in Marathon's Jet Star program, the highest in the Marathon Aviation Division.

In June of 1984, the Marathon Aviation Division received authorization to add a plane and two (2) pilots to the operation in Houston, Texas. They turned to the Findlay operation in Houston, Texas. They turned to the Findlay operation for the necessary personnel. Appellees J. R. Neds (Neds), Aviation Division Manager, and J.W. Maxie (Maxie), Flight Operations Manager, jointly considered whom they should transfer to Houston.

Neds and Maxie felt obligated to first offer the opportunity to Eldon Haselhuhn (Haselhuhn), as a matter of deference to his seniority, though he was not their preference for the transfer. Haselhuhn declined the opportunity and chose to remain in Findlay. Neds and Maxie then felt free to approach Lineken, their preference, to offer him the transfer.

On June 14, 1984, Lineken was summoned to a meeting with Maxie at which time he was told that he was being transferred to Houston effective September 1, 1984. Maxie asked him to respond by the following Monday, June 18th. On the following Monday Lineken met with Maxie and inquired as to why he was being transferred and whether the reason was to groom him for the Senior Pilot position in Houston. Maxie indicated that the transfer was not being made in anticipation of a promotion and that his paycheck would be in Houston on September 1, 1984.

On July 16, 1984, Lineken met with Neds to explain the financial and practical difficulties which he would incur in moving his family to Houston. Being dissatisfied with the answers given him in the meeting, Lineken requested permission to discuss employment possibilities with the Cooper Tire and Rubber Company (Cooper Tire). Marathon granted him permission to do so.

Marathon flew Lineken and his wife to Houston so they could look for housing. The morning after returning from Houston, Lineken was scheduled to fly a Marathon airplane out of the Findlay airport. While he was at the airfield awaiting the departure time he was called to a meeting with Neds and Maxie to discuss the progress he had made in finding a home in Houston. Lineken started to review his list of complaints about the move including the cost of housing in Houston. Lineken became so upset over the difficulties that he perceived with the transfer that his supervisors deemed it necessary to remove Lineken from flight status to avoid having him at the controls of an airplane while in that state of mind. Later that same day Lineken was called into a meeting with his supervisor and presented with a letter of resignation and asked to sign it. He refused, stating that he was going to resign, but it would take him 30 days to do so. At that point Lineken was terminated on July 30, 1984.

Lineken filed a complaint in the Court of Common Pleas of Hancock County naming as defendants Neds, Maxie and Marathon and alleging wrongful termination, age discrimination and a variety of tort claims. By judgment entry dated November 7, 1986, the Court of Common Pleas sustained the appellees' motion for summary judgment against appellant and dismissed the complaint.

It is from this judgment that appellant appeals submitting three (3) assignments of error, the first of which is as follows:

*ASSIGNMENT OF ERROR NO. 1:*

THE TRIAL COURT ERRED IN GRANTING MARATHON'S MOTION FOR SUMMARY JUDGMENT BY MAKING FACTUAL DETERMINATIONS OF MATERIAL FACT THAT (1) LINEKEN REFUSED TO ACCEPT A TRANSFER, (2) LINEKEN'S EMPLOYMENT CONTRACT WAS NOT SUBJECT TO A NO-FORCED-TRANSFER POLICY AND (3) LINEKEN'S EMPLOYMENT CONTRACT DID NOT PROVIDE EXPRESS AND IMPLIED COVENANTS OF GOOD FAITH AND FAIR DEALING.

Ohio law has long recognized the validity of employment- at-will agreements. See e.g., *LaFrance* v. *International Brotherhood* (1923), 108 Ohio St. 61; *Henkel* v. *Educ. Research Council* (1976), 45 Ohio St. 2d 249; *Fawcett* v. *G.C. Murphy & Co.* (1976), 46 Ohio St. 2d 245; *Evely* v. *Carlon Co.* (1983), 4 Ohio St. 3d 163; *Mers* v. *Dispatch Printing Co.* (1985), 19 Ohio St. 3d 100. Nonetheless, Ohio courts have consistently recognized various contractual or quasi-contractual obligations which may arise throughout the course of an employee's tenure thereby limiting the at-will nature of the agreement and the rights of a party to terminate it. See *Mers, supra; Helle* v. *Landmark Inc.* (1984), 15 Ohio App. 3d 1; *Helmick* v. *Cincinnati Word Processing, Inc.* (1989), 45 Ohio St. 3d 131; *Kelly* v. *Georgia-Pacific Corp.* (1989), 46 Ohio St. 3d 134; *King* v. *Hospital Care Corp.* (May 13, 1986), Allen App. No. 1-85-1, unreported.

It is based upon this principle that appellant contends that he was wrongfully discharged. Appellant argues that various representations that Marathon made through its agents, its course of dealing and its employee and supervisory handbooks limited the at-will nature of his employment agreement. Therefore, Marathon did not have just cause to discharge him for refusing to transfer and, if refusal to transfer is deemed an adequate reason for discharge, the facts, when viewed in a light most favorable to appellant as required by Civ. R. 56(C), did not establish that appellant refused to transfer. Appellant argues numerous points in support of this proposition, each of which will be addressed individually.

Firstly, appellant contends that "[t]he trial court improperly made the factual determination that appellant refused to transfer to Houston, Texas". Appellant argues that "[p]ursuant to Rule 56 [sic], the court was obligated to construe the evidence most strongly in favor of Lineken which, given Lineken's repeated testimony that he did not refuse to transfer, required the court to find that Lineken did not refuse the transfer and mandates that Marathon's motion for summary judgement be denied".

Civ. R. 56 does not require the trial court to confine its consideration to the statements of the non-movant in ruling on a motion for summary judgment. The trial court found that reasonable minds could not fail to conclude that appellant refused the transfer to Houston after considering all the evidence. Appellant's argument implies that the only way the trial court can find that he refused the transfer to Houston is if he expressly stated in his testimony that he refused. We find this unpersuasive; acts of appellant grossly inconsistent with any intention to transfer can be construed as a refusal.

In the case *sub judice* appellant was disagreeable throughout every phase of the transfer. The record demonstrates that appellant sought permission to discuss his employment possibilities with Cooper Tire. He continually maintained the position that he would need a raise in salary to make the transfer stating "[w]e'll go to Houston but I've got to have more money to go to Houston". In sum, he was instructed to transfer to Houston and, while he did not expressly refuse, his extremely uncooperative attitude and the conditions attached to his agreement to transfer amounted to a refusal. Cumulatively, these actions, all being inconsistent with any intent to transfer to Houston, can properly be considered a refusal as matter of law.

Nextly, appellant contends that "[t]he trial court improperly made the factual determination that the employment contract was not subject to a no-forced-transfer policy". In *Mers, supra* (paragraph two of the syllabus), the Ohio Supreme Court found as follows:

"[t]he facts and circumstances surrounding an oral employment-at-will agreement, including the character of the employment, custom, the course of dealing between the parties, company policy, or any other fact which may illuminate the question can be considered by the trier of fact in order to determine the agreement's explicit and implicit terms concerning discharge."

In light of this holding, appellant contends that Marathon's handbook, policy, and course of dealing when collectively considered, amounted to a no-forced-transfer policy. The trial court found there to be such policy in existence at Marathon. Appellant cites Marathon's employee handbook which states "[s]ince company operations are worldwide you may at some time in your career have the opportunity to transfer from one geographical area to another". Appellant also cites the fact that the senior pilot, Haselhuhn, was given the opportunity to transfer to Houston, but was not discharged when he rejected the opportunity. Appellant further cites, the testimony of Neds and Maxie that no employee had ever been discharged for refusing to transfer. However, this did not create a policy at Marathon. It was merely a statement that the necessity to discharge for that reason had never arisen. Lastly, appellant argues that the positive, passive language used in Marathon's employee

handbook established a policy that no one would be required to transfer and that if Marathon so intended transfers to be mandatory it could and would have expressly said so.

We find no evidence in the record to support the appellant's claim. To accept appellant's argument would be to find that Marathon, in need of transferring a pilot to Houston, would have to hope that one of the pilots would be desirous of moving to Houston. If none were willing to go voluntarily then Marathon simply could not transfer anyone according to appellant. This would be an absurd result. We find nothing in the record to support the position of appellant on this point.

As regards appellant's argument that if Marathon intended to force employees to transfer it would have stated such in its materials, we note, that it can as readily be said that had Marathon intended a no-forced-transfer policy it could have expressly stated such. In fact, it is more likely that they would have expressly said so if they intended to implement a no-forced transfer policy because it could then be used as a bargaining chip in recruiting and competing for young pilots. The characterization of a transfer as an "opportunity" is a matter of positivism, an attempt to create an amenable frame of mind in an employee when confronted with a transfer.

As regards Marathon's not discharging Haselhuhn for rejecting the transfer we find this immaterial and not indicative of a policy to be enforced against Marathon. Appellant was Marathon's choice for the transfer, not Haselhuhn. He was not forced to go to Houston because he was not management's choice. They were merely demonstrating respect for his seniority by offering the transfer.

Lastly, appellant argues that the "trial court improperly determined that there were no express nor implied in fact covenants of good faith and fair dealing with regard to the employment contract". Ohio law recognizes no good faith requirement to be imputed employment-at-will relationships. See *Mers, supra* at 105. Furthermore, the record discloses no facts giving rise to a breach of a good faith provision in the contract even if such existed.

Civ. R. 56(C) provides, in pertinent part, as follows:

" * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

We find that the trial court was correct in concluding that appellees did not make any representations through its course of dealing, handbooks nor its agents which were sufficient to alter the at-will character of appellant's employment.

Appellant's first assignment of error is not well taken and is overruled.

For his second assignment of error appellant submits the following:

*ASSIGNMENT OF ERROR NO. 2:*
THE TRIAL COURT ERRED IN GRANTING MARATHON'S MOTION FOR SUMMARY JUDGMENT ON THE TORT CLAIMS.

The trial court sustained appellee's motion for summary judgment and dismissed all of appellant's tort claims, each of which ill be considered individually.

The fourth count of appellant's Complaint alleged that appellees "maliciously and intentionally inflicted emotional distress". The Ohio Supreme Court first recognized the tort of intentional infliction of emotional distress in *Yeager* v. *Local Union 20* (1983), 6 Ohio St. 3d 369, as follows:

"[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

There is conflicting authority in Ohio law as to whether damages arising from intentional infliction of emotional distress are compensable in the employment-at-will context. However, it is unnecessary for us to consider this issue because the record does not contain facts supporting the cause of action.

In *Yeager, supra* at 374-375, the Ohio Supreme Court found:

"[w]ith respect to the requirement that the conduct alleged be 'extreme and outrageous' we find comment d to section 46 of the Restatement, supra, at 73, to be instructive in describing this standard.

" '* * * It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice', or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible

bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"

As a matter of law, the facts as appellant states them do not rise to this degree of severity. Accordingly, summary judgment was proper to dismiss appellant's claim of intentional infliction of emotional distress.

The second and fifth counts of appellant's Complaint are substantially similar and will be considered jointly . The second count of appellant's Complaint alleges that appellees Neds and Maxie "[i]ntentionally and maliciously interfered with plaintiff's contractual relationship with Marathon resulting in his wrongful discharge". The fifth count of appellant's Complaint alleges that Marathon "[w]as negligent in the selection, training and supervision of its supervisors which directly resulted in the wrongful discharge of plaintiff from Marathon's employment".

Having found no wrongful conduct of any degree, neither intentional nor negligent, on the part of Marathon's agents, there exists no basis in the record upon which Marathon could be found to have been negligent in the hiring of Neds and Maxie or that Neds and Maxie have intentionally and maliciously interfered with Lineken's contractual relationship with Marathon.

The facts being such that reasonable minds could come to but one conclusion, that conclusion being adverse to appellant, we find that the trial court was correct in granting summary judgment on appellant's tort claims.

Appellant's second assignment of error is not well taken and is overruled.

For his third assignment of error appellant submits the following:

### ASSIGNMENT OF ERROR NO. 3:
### THE TRIAL COURT ERRED IN DISMISSING PLAINTIFF'S AGE DISCRIMINATION CLAIM.

R.C. 4101.17 reads, in pertinent part, as follows:

"(A) No employer shall discriminate in any job opening against any applicant or discharge without just cause any employee between the ages of forty and seventy who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee."

In *Barker* v. *Scovill, Inc.* (1983), 6 Ohio St. 3d 146 (paragraphs one and two of the syllabus), the Ohio Supreme Court specified the requisite elements for one to demonstrate a prima facie violation of R.C. 4101.17, as follows:

"1. In order to establish a prima facie case of age discrimination, violative of R.C. 4101.17, in an employment discharge action, plaintiff-employee must demonstrate (1) that he was a member of the statutorily protected class, (2) that he was discharged, (3) that he was qualified for the position, and (4) that he was replaced by, or that his discharge permitted the retention of, a person not belonging to the protected class. Defendant-employer may then overcome the presumption inherent in the prima facie case by propounding a legitimate, nondiscriminatory reason for plaintiff's discharge. Finally, plaintiff must be allowed to show that the rationale set forth by defendant was only a pretext for unlawful discrimination.

"2. Within the context of R.C. 4101.17, 'just cause' for discharge is established if plaintiff was terminated for reasons other than those explicitly prohibited by the statute."

The trial court summarily dismissed appellant's age discrimination claim because the facts did not "establish that he was replaced by, or that his discharge permitted the retention of a person not belonging to the protected class". Appellant contends that this finding was erroneous because subsequent to appellant's discharge two (2) pilots were promoted into the Jet Star program, neither of which were a member of the protected class as required under *Barker*.

The record demonstrates that these two pilots were not promoted to replace appellant. Rather, retirements necessitated the promotion of the younger pilots. Appellant was being moved to Houston, thus, the vacancies in Findlay would have arisen regardless of appellant's termination. Appellant's replacement in the transfer to Houston was David Kluborg (Kluborg). Kluborg was over forty (40) years old and thus a member of the protected class.

Appellant's third assignment of error is not well taken and is overruled.

Having found no error prejudicial to appellant herein, in any of the particulars assigned and argued, the judgment of the trial court is affirmed.

*Judgment affirmed.*

SHAW, P.J., and MILLER, J., Concur.