**HANLY, Appellant,**

**v.**

**RIVERSIDE METHODIST HOSPITALS, Appellee.**

[Cite as *Hanly v. Riverside Methodist Hosp.* (1991), 78 Ohio App.3d 73.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–750.

Decided Dec. 31, 1991.

**76**

■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

*Bidwell & Beachler Co., L.P.A., Jinx Statler Beachler* and *David M. Bidwell,* for appellant.

*Bricker & Eckler Co., L.P.A., Jerry E. Nathan* and *Timothy J. Owens,* for appellee.

Peggy Bryant, Judge.

Plaintiff-appellant, Edward J. Hanly, appeals from a judgment of the Franklin County Court of Common Pleas granting the summary judgment motion of defendant-appellee, Riverside Methodist Hospitals.

Defendant hired plaintiff as a nursing assistant in 1982. Except for a brief medical/surgical rotation in 1983, plaintiff worked exclusively in defendant's mental health division, now known as the "Wesley Health Center."

As plaintiff was leaving the hospital on May 18, 1989, at the conclusion of his night work shift, he entered an elevator on the third floor with Eric Maddox, another nursing assistant, and Jan Titus, a unit clerk. No other persons were on the elevator at the time. A short time after exiting the elevator, Titus reported to her supervisor that both men "groped" her as the elevator descended from the third floor to the second floor, at which time a fourth person entered the elevator.

When plaintiff and Maddox reported for their next work shift late that same evening, each was called into a meeting with Deborah Kilgore, the nurse manager to whom each reported, and Eugene Rhodes, defendant's personnel director, and they were notified of Titus' accusation. Maddox and plaintiff denied engaging in such conduct; Maddox stated that he merely brushed up against Titus while pressing the elevator button, while plaintiff maintained that such contact with Titus was a physical impossibility, as he was holding a bookbag in his left hand and a textbook and other materials in his right hand at the time.

Both plaintiff and Maddox were placed on decision-making suspension pending an investigation of the alleged incident; subsequently, both were discharged when defendant's investigation of the incident determined that they had violated a major hospital rule prohibiting sexual harassment. Plaintiff unsuccessfully appealed his discharge to a grievance committee.

As a result, plaintiff brought suit against defendant, alleging breach of contract, slander, breach of an implied or express covenant of good faith and fair dealing, promissory estoppel, and intentional and negligent infliction of emotional distress. The trial court granted defendant's summary judgment motion as to all of plaintiff's claims.

Plaintiff appeals therefrom, assigning the following five errors:

"The trial court committed reversible error in sustaining appellee's motion for summary judgment as to appellant's following claims:

"a.   Breach of Contract;

"b.   Slander;

"c.   Promissory Estoppel;

"d.   Intentional Infliction of Emotional Distress;

"e.   Negligent Infliction of Emotional Distress."

We consider plaintiff's first and third assignments of error together, since both implicate the existence of an employment relationship other than at will.

Plaintiff's first assignment or error asserts that the trial court erred in granting defendant's summary judgment motion as to plaintiff's claim for breach of contract.

Plaintiff asserts that defendant provided to him upon his hiring in 1982 certain documents containing defendant's employment policies and procedures; that such documents created an implied contract of employment which precluded defendant from discharging plaintiff at will; and that defendant's issuance of a new employee handbook in October 1987, with a disclaimer stating that plaintiff's employment was at will, was ineffective to modify the existing terms and conditions of plaintiff's employment. Defendant responds that the documents provided to plaintiff upon his hiring contain no promises specific enough to create an implied contract of employment.

■ Under Ohio law, an employment relationship with no fixed duration is deemed to be at will, meaning the employee is free to seek work elsewhere and the employer may terminate the employment relationship without cause. *Henkel v. Educational Research Council* (1976), 45 Ohio St.2d 249, 74 O.O.2d 415, 344 N.E.2d 118. However, the Supreme Court has recognized exceptions to the foregoing general rule, including the existence of an implied contract. *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 19 OBR 261, 483 N.E.2d 150. Specifically, employee handbooks, company policy, and oral representations in some situations may comprise components or evidence of employment contracts. See, *e.g., Kelly v. Georgia–Pacific Corp.* (1989), 46

Ohio St.3d 134, 545 N.E.2d 1244; *Helmick v. Cincinnati Word Processing, Inc.* (1989), 45 Ohio St.3d 131, 543 N.E.2d 1212.

■ In an effort to create an implied contract of employment, plaintiff relies on language from defendant's 1982 employment policies and procedures stating that "Riverside's policy is to be frank, fair and honest and to respect their rights as employees," and its published value statement that "[w]e honor the dignity and worth of each person." However, such language contains no promise specific enough to give rise to an implied contract of employment. Cf. *Stokes v. Worthington Industries, Inc.* (June 29, 1989), Franklin App. No. 88AP–583, unreported, 1989 WL 71641.

■ The disciplinary procedure described in the employee handbook provided to plaintiff upon his hiring does not support an implied contract in providing that:

"*Whenever possible,* a progressive disciplinary system is administered. The first step is *usually* an oral warning. * * * " (Emphasis added.)

The foregoing provision indicates that defendant's disciplinary procedure was intended only as a guide for taking corrective action, and that defendant had no obligation to comply strictly with that procedure. See *Karnes v. Doctors Hosp.* (Oct. 27, 1988), Franklin App. No. 87AP–1028, unreported, 1988 WL 115945, affirmed (1990), 51 Ohio St.3d 139, 555 N.E.2d 280. Moreover, nothing in the portion of such disciplinary procedure contained in the record before us precludes the immediate discharge of an employee for violation of hospital rules.

■ However, defendant's employment policies and procedures, issued to plaintiff in 1982, state that "[i]t is the department head's responsibility to ensure that there is just cause for discharge prior to initiating termination procedures." In addition, Deborah Kilgore, plaintiff's nurse manager, testified that she had received supervisory training regarding the requirement that just cause exist for the discharge of employees. The foregoing provides sufficient evidence from which a jury reasonably could conclude that plaintiff could not be terminated at the will of defendant. *Cooper v. Am. Postal Workers Union, Columbus Area, AFL–CIO* (Mar. 11, 1986), Franklin App. No. 85AP–404, unreported, 1986 WL 3223.

Notwithstanding that a jury reasonably could find that the employment policies and procedures provided to plaintiff in 1982 created an implied contract, defendant maintains that the terms of plaintiff's employment are governed by the employee handbook provided to plaintiff in October 1987, together with an acknowledgement form disclaiming the existence of an employment relationship other than an at-will relationship, and that under

*Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph one of the syllabus, such a disclaimer precludes an employment contract based on the terms of an employee handbook. Plaintiff argues that he did not assent to defendant's attempt in 1987 to modify the terms of plaintiff's 1982 employment contract, stating on the form acknowledging receipt of the new handbook that "I have received the Handbook but do not agree with the comments above." Thus, plaintiff asserts that defendant's issuance of the new handbook and disclaimer in October 1987 did not modify the existing terms and conditions of plaintiff's employment. Defendant responds that despite plaintiff's qualified acknowledgement, plaintiff assented to the terms contained in the new handbook disclaimer by remaining in defendant's employ and accepting a subsequent pay raise.

A party to an existing contract may modify that contract only with the assent of the other party to the contract. *Frengel v. Ports Petroleum Co.* (Sept. 11, 1987), Trumbull App. No. 3790, unreported, 1987 WL 16922. Plaintiff signed the form acknowledging receipt of the new employee handbook but expressly noted that he did not agree with the acknowledgement form's disclaimer of an employment relationship other than at will. Nor did plaintiff accept the modification simply by continuing his employment with defendant. *Id.* Since the record does not reveal that plaintiff assented to the contract modification proposed by defendant, defendant's attempt to modify the terms of plaintiff's existing contract was ineffective.[1] See *King v. Hosp. Care Corp.* (May 13, 1986), Allen App. No. 1–85–1, unreported, 1986 WL 5910.

In short, the "just cause" portion of the employment policies and procedures defendant provided to plaintiff in 1982 is sufficient to create an issue for the jury regarding the existence of an implied employment contract, and plaintiff did not assent to defendant's attempt to modify that contract in 1987. Hence, the trial court erred in concluding that defendant was entitled to summary judgment on plaintiff's breach-of-contract claim. Accordingly, we sustain plaintiff's first assignment of error.

Plaintiff's third assignment of error asserts that the trial court erred in granting defendant's summary judgment motion as to plaintiff's claim for promissory estoppel. Plaintiff argues that even if no implied employment

---

1. The "Relative Hiring Policy" in defendant's 1987 handbook seemingly acknowledges defendant's inability to unilaterally modify the conditions of employment for employees who were hired prior to issuance of the new handbook. The policy permits employment of members of an employee's immediate family only if the family member is hired to work in a different department, but provides that "[e]mployees and immediate family members working in the same department prior to October 1, 1987, will not necessarily be required to transfer or terminate employment * * *."

contract exists, defendant is precluded from exercising its right to discharge plaintiff at will, because plaintiff has forgone other employment opportunities in reliance on defendant's promises of job security. Defendant responds that it made no promises of job security to plaintiff sufficient to invoke the promissory estoppel exception to the employment-at-will doctrine.

■ As the Supreme Court noted in *Mers, supra,* the doctrine of promissory estoppel provides another exception to the employment at-will doctrine by preventing an employer from exercising its unfettered right to discharge under an employment at-will relationship when " * * * the employer should have reasonably expected its representation to be relied upon by its employee, and * * * the expected action or forbearance actually resulted and was detrimental to the employee." *Id.* at paragraph three of syllabus. However, the promissory estoppel exception to the employment-at-will doctrine set forth in *Mers, supra,* requires that plaintiff demonstrate detrimental reliance on specific promises of job security. *Wing, supra,* 59 Ohio St.3d at 110, 570 N.E.2d at 1098, citing *Helmick, supra,* at paragraph three of the syllabus.

■ Although plaintiff claims that in reliance on defendant's promises of job security he did not seek other employment, the record contains no indication that defendant dissuaded plaintiff from pursuing specific job opportunities outside the hospital by making promises of job security. Rather, the record contains only plaintiff's bare assertion that he gave up opportunities at other employment. Plaintiff's deposition states that he neither looked for employment outside the hospital at the time defendant allegedly made the representations in issue, nor turned down any offers of employment after the alleged representations were made. Absent evidentiary support, such an assertion is insufficient to invoke the promissory estoppel exception to the employment-at-will doctrine. *Smith v. Robins Beverage Group, Inc.* (Sept. 3, 1991), Franklin App. No. 90AP–1022, unreported, 1991 WL 224510; see, also, *Pyle v. Ledex, Inc.* (1988), 49 Ohio App.3d 139, 146, 551 N.E.2d 205, 212. Hence, the trial court did not err in granting defendant's summary judgment motion as to plaintiff's promissory estoppel claim. Accordingly, we overrule plaintiff's third assignment of error.

Plaintiff's second assignment of error asserts that the trial court erred in granting defendant's summary judgment motion as to plaintiff's claim for slander. Plaintiff contends that defendant made false and defamatory statements to plaintiff's fellow employees regarding plaintiff's discharge and the cause thereof. Defendant contends that its publication of such statements was protected by qualified privilege.

Generally, a communication made in good faith on a matter of common interest between an employer and an employee, or between two employees concerning a third employee, is protected by qualified privilege. See, *e.g., Evely v. Carlon Co.* (1983), 4 Ohio St.3d 163, 165–166, 4 OBR 404, 406–407, 447 N.E.2d 1290, 1292–1293; *Stearns v. Ohio Savings Assn.* (1984), 15 Ohio App.3d 18, 20, 15 OBR 39, 41, 472 N.E.2d 372, 374. The elements necessary to establish privilege are " ' * * * good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only.' " (Emphasis omitted.) *Hahn v. Kotten* (1975), 43 Ohio St.2d 237, 244, 72 O.O.2d 134, 138–139, 331 N.E.2d 713, 719. Once defendant demonstrates the existence of the qualified privilege, plaintiff can prevail only upon a showing of actual malice. *Evely, supra,* 4 Ohio St.3d at 166, 4 OBR at 407, 447 N.E.2d at 1293.

Even if we accept plaintiff's contention that defendant's statements were false, the record reveals that defendant held several meetings with employees of the Wesley Health Center shortly after plaintiff's suspension, wherein defendant explained its policy regarding sexual harassment, provided notice that two employees had been suspended pending an investigation of an incident involving sexual harassment, and permitted the employees attending the meetings to vent their concerns regarding the suspensions. Thus, defendant's statements were communicated in the employment setting concerning matters of common hospital interest.

Although the record reveals no publication by defendant of the statements in issue to employees other than those working in the Wesley Health Center, plaintiff nevertheless contends that defendant exceeded the scope of the privilege by including in its meetings employees with whom plaintiff had not worked for years and employees with whom plaintiff had never worked. However, as plaintiff's deposition suggests, it was not unusual for Wesley Health Center employees who worked on a particular shift or a particular floor to come into contact with employees from other shifts or other floors. Thus, even employees of Wesley Health Center with whom plaintiff had not worked recently were proper parties to defendant's statements, particularly in light of defendant's purpose of affirming its policy regarding sexual harassment during such meetings.

Plaintiff further contends that defendant's statements were not privileged because they were made in bad faith and with malice. However, the record discloses no evidence of hatred or ill will on the part of defendant or its agents.

Based upon the foregoing, the alleged defamatory statements defendant made to plaintiff's fellow employees fall within the defense of qualified

privilege. Thus, the trial court did not err in granting defendant's summary judgment motion as to plaintiff's slander claim. Accordingly, we overrule plaintiff's second assignment of error.

Plaintiff's fourth assignment of error asserts that the trial court erred in granting defendant's summary judgment motion as to plaintiff's claim for intentional infliction of emotional distress. Plaintiff claims that he suffered serious emotional distress as a result of defendant's conduct in dismissing him for sexual harassment and publishing defamatory statements about plaintiff.

A claim for intentional infliction of emotional distress requires plaintiff to show that (1) defendant intended to cause emotional distress, or knew or should have known that actions taken would result in serious emotional distress; (2) defendant's conduct was extreme and outrageous; (3) defendant's actions proximately caused plaintiff's psychic injury; and (4) the mental anguish plaintiff suffered was serious. *Pyle v. Pyle* (1983), 11 Ohio App.3d 31, 34, 11 OBR 63, 66, 463 N.E.2d 98, 103. However, defendant is not liable for plaintiff's emotional distress if defendant does no more than " 'insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress * * *.' " *Uebelacker v. Cincom Systems, Inc.* (1988), 48 Ohio App.3d 268, 277, 549 N.E.2d 1210, 1220; *Foster v. McDevitt* (1986), 31 Ohio App.3d 237, 239, 31 OBR 520, 523, 511 N.E.2d 403, 406, both quoting 1 Restatement of the Law 2d, Torts (1965) 76, Section 46, Comment *g*.

The record reveals that defendant placed plaintiff on a decision-making suspension pending an investigation of the allegations brought against plaintiff; that defendant conducted such an investigation, concluding that defendant had sexually harassed a co-worker; that defendant's subsequent meeting with plaintiff to advise him of his discharge was conducted in a civilized manner; and that defendant afforded plaintiff the opportunity to appeal his discharge to defendant's grievance committee but that plaintiff's appeal was unsuccessful. We cannot say that the foregoing conduct was so extreme and outrageous " * * * as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. * * * " *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 374–375, 6 OBR 421, 426, 453 N.E.2d 666, 671.

As to plaintiff's claim that his emotional distress resulted from defendant's publication of defamatory statements about plaintiff, we have already determined that such publication was protected by qualified privilege. Moreover, to the extent that defendant's conduct in discharging plaintiff and publishing the reason for plaintiff's discharge was not merely an exercise of defendant's legal rights, such conduct was not so extreme and outrageous to support a

claim for intentional infliction of emotional distress. Accordingly, the trial court did not err in granting defendant's motion for summary judgment as to plaintiff's claim for intentional infliction of emotional distress. We therefore overrule plaintiff's fourth assignment of error.

Plaintiff's fifth assignment of error asserts that the trial court erred in granting defendant's summary judgment motion as to plaintiff's claim for negligent infliction of emotional distress.

As we recently noted in *Hatlestad v. Consol. Rail Corp.* (1991), 75 Ohio App.3d 184, 598 N.E.2d 1302, Ohio courts do not recognize a separate tort for negligent infliction of emotional distress in the employment context. See, also, *Tohline v. Central Trust Co., N.A.* (1988), 48 Ohio App.3d 280, 284, 549 N.E.2d 1223, 1228; *Antalis v. Ohio Dept. of Commerce, Div. of Consumer Finance* (1990), 68 Ohio App.3d 650, 589 N.E.2d 429. Consequently, plaintiff may recover for emotional harm negligently inflicted by defendant only by bringing a "traditional" claim for negligent infliction of emotional distress, which requires plaintiff to show that he (1) was a bystander to an accident; (2) reasonably anticipated the peril thereof; and (3) suffered serious and foreseeable emotional distress as a result of his cognizance or fear of the peril. *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 6 OBR 114, 451 N.E.2d 759, paragraphs three and four of the syllabus.

Defendant having failed to allege or produce evidence that his emotional distress resulted from his appreciation of an accident's peril, the trial court did not err in granting summary judgment to defendant on plaintiff's claim for negligent infliction of emotional distress. Accordingly, we overrule plaintiff's fifth assignment of error.

Having sustained plaintiff's first assignment of error and having overruled plaintiff's second, third, fourth and fifth assignments of error, we reverse the judgment of the trial court only as to plaintiff's claim for breach of contract, affirm the judgment of the trial court as to plaintiff's remaining claims, and remand for further proceedings in accordance herewith.

> *Judgment affirmed in part,*
> *reversed in part*
> *and cause remanded.*

BOWMAN, P.J., and REILLY, J., concur.

ARCHER E. REILLY, J., retired, of the Tenth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.