[Cite as *Mills Van Lines, Inc. v. Prudential Real Estate & Relocation Servs.*, 2011-Ohio-3833.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 95582 and 95819**

# MILLS VAN LINES INC.

PLAINTIFF-APPELLANT

vs.

# PRUDENTIAL REAL ESTATE AND RELOCATION SERVICES, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
**AFFIRMED**

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-554526

**BEFORE:** Rocco, J., Stewart, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** August 4, 2011

**ATTORNEY FOR APPELLANT**

James A. Hofelich
James A. Hofelich, LPA
28180 Detroit Avenue C-1
Westlake, Ohio 44145

**ATTORNEYS FOR APPELLEES**

Marquettes D. Robinson
Amanda J. Martinsek
Thacker Martinsek LPA
1375 East 9th Street
Suite 2330
Cleveland, Ohio 44114

KENNETH A. ROCCO, J.:

**{¶ 1}** Plaintiff-appellant, Mills Van Lines, Inc. ("appellant"), appeals from the trial court order that granted summary judgment to defendants-appellees, Prudential Real Estate and Relocation Services and Hardy Jackson (referred to collectively as "Prudential" or "appellee"), on causes of action for defamation and tortious interference with a business relationship. Finding no merit to this appeal, we affirm.

{¶ 2}   Appellant is a trucking company that moves and stores household goods within Ohio and provided moving services to several of appellee's clients.   Appellee provides relocation management services to corporations and governments worldwide.   As is pertinent to this case, appellee essentially acts as the middle-man between appellant and appellee's clients by managing the transportation and storage of household goods of its clients' relocating employees, commonly referred to as "transferees."   Hardy Jackson is the Vice President of Global Transportation Alliance for Prudential.

{¶ 3}  After working with appellant for sometime, appellee recommended appellant to be the primary provider of moving services to the transferees of Toyota Manufacturing North America, a large automobile manufacturer which provides relocation benefits to its executives and employees.  Appellee had a contractual relationship with Toyota since 1996. Toyota accepted appellee's recommendation and in 2001, appellant began transporting and storing all of Toyota transferees' household goods. Appellee's contract with Toyota required it to audit all vendor invoices to verify mathematical accuracy, compare invoices with initial estimates, and verify that the services billed to Toyota were actually performed.

{¶ 4} In early 2004, while performing its routine auditing obligations, appellee began noticing on appellant's invoices to Toyota an unusual frequency in the occurrence of long carries, shuttle usage, unpacking services, and stair carries without authorization. Concerned, appellee re-reviewed several previous months of appellant's invoices, almost all of which appellee already paid on behalf of Toyota.

{¶ 5} After appellee's search revealed unsatisfactory results, appellee then contacted recent Toyota transferees to inquire whether there were stairs, excessive distances, narrow streets, and unpacking services to justify the extra charges. Of the transferees appellee successfully contacted, a large number of them provided information indicating these were charges for unnecessary services as well as services never performed.

{¶ 6} Appellee's findings caused it to bring the billing discrepancies to Toyota's attention. Appellee and Toyota agreed to hire RIS Consulting Group ("RIS"), an outside third-party, to review the recent invoices, contact the transferees, and report its findings. The RIS investigation also found instances of overcharging.

{¶ 7} Thereafter, appellee and Toyota afforded appellant the opportunity to respond to the results of the investigations. Unsatisfied with

their response, Toyota terminated its business relationship with appellant three months later.

{¶ 8} On February 11, 2005, this lawsuit ensued. Appellant filed a complaint alleging an account claim, as well as claims for defamation and tortious interference with a business contract.[1] Appellant alleged it was defamed by appellee's statements to Toyota that appellant overcharged for moving services. Appellant also claimed that these false statements caused Toyota to terminate its business relationship with appellant. Following the trial court's denial of a number of appellee's motions to dismiss, appellee answered the complaint and asserted fraud and unjust enrichment counterclaims.

{¶ 9} A lengthy discovery process then ensued that included numerous extensions in the deadline. Also, during this process, without attempting to cooperatively schedule the depositions of any of appellee's witnesses, appellant, on October 15, 2008, faxed appellee ten notices of depositions, nine of which were for third-party witnesses. Appellee asked appellant to withdraw the notices, and instead, issue subpoenas as many of the witnesses resided out-of-state. Appellant refused and appellee filed a motion for

---

[1] Appellant also made a claim that appellee violated Ohio's intrastate regulations of the moving of household goods but the trial court dismissed that count on December 17, 2007.

protective order on October 17, 2008. Appellee inadvertently failed to serve said motion upon appellant. Then, on November 3, 2008, the day of the final discovery deadline, the trial court granted the motion for protective order. Appellant moved to vacate the protective order on November 14, 2008, citing failure of service. The trial court denied the motion on November 24, 2008, apparently finding service irrelevant to the ultimate outcome of the motion.

{¶ 10} On January 5, 2009, appellee moved for summary judgment on all of appellant's claims. Appellant moved for an extension to respond to appellee's motion. In a status conference held on February 12, 2009, the court granted the extension until February 17, 2009.

{¶ 11} Appellant never responded to the motion for summary judgment, but rather, filed a number of motions concerning discovery. On February 17, 2009, appellant filed a motion to strike Exhibits 19 and 20 as well as a motion in limine to exclude any offers to compromise from the motion for summary judgment. Additionally, ten days later, appellant filed a motion to strike the affidavits attached to appellee's motion for summary judgment alleging a violation of the hearsay rules. Appellant also moved for additional time to conduct discovery and oppose the motion for summary judgment pursuant to Civ.R. 56(F). Finally, in March of 2009, appellant filed a motion to compel appellee to produce additional documents and to revise its response to an

interrogatory that sought the identity of employees who participated in appellant's internal investigation into the overcharging.

{¶ 12} On March 31, 2009, the trial court denied appellant's Civ.R. 56(F) motion and motion to compel. A few days later, on April 2, 2009, the trial court also denied appellant's motions to strike Exhibits 19 and 20 and the affidavits. The court, however, granted appellee's motion for summary judgment as to appellant's claims for defamation and tortious interference only. The court denied appellee summary judgment on appellant's account claim and appellee's counterclaims for fraud and unjust enrichment.

{¶ 13} On November 20, 2009, appellant filed a motion for relief from judgment pursuant to Civ.R. 60(B). On December 14, 2009, the trial court denied this motion.

{¶ 14} For the remaining claims, the trial court scheduled the trial for July 19, 2010. On the day of trial, the trial court granted appellant's motion in limine to exclude Exhibits 19 and 20 pursuant to Evid.R. 408. That same day, the parties settled all remaining claims.

{¶ 15} In August of 2010, appellant filed a second Civ.R. 60(B) motion, renewing its first motion, which the trial court again denied a month later. Appellant now timely appeals and presents the following six assigned errors for our review:

"I.    The trial court erred in its ruling on March 31, 2009 granting in part defendants' motion for summary judgment that the defendants are entitled to judgment on the claim of defamation/tortious interference as a matter of law.

"II.    The trial court erred and abused its discretion in ruling on March 31, 2009 denying plaintiff Mills Van Lines, Inc., (1) motion to strike exhibits 19 & 20 and in limine regarding offers to compromise and (2) motion to strike affidavits attached to defendants' motion for summary judgment.

"III.    The trial court erred and abused its discretion in ruling on March 31, 2009 denying plaintiff Mills Van Lines, Inc., (1) motion pursuant to Civ.R. 56(F), (2) motion to compel defendants to completely and accurately answer plaintiff's interrogatory no. 1 and (3) motion to compel defendants to produce requested documents in plaintiff's second request for production of documents pursuant to Civ.R. 37(A).

"IV.    The trial court erred and abused its discretion in ruling on November 24, 2008 denying plaintiff Mills Vans [sic] Lines, Inc., motion to vacate protective order.

**"V.   The trial court erred and abused its discretion in ruling on December 14, 2009 denying plaintiff's motion pursuant to Civ.R. 60(B)(1) and (5).**

**"VI.   The trial court erred and abused its discretion in ruling denying plaintiff's motion pursuant to Civ.R. 60(B)(1) and (5) filed August 27, 2010 entered on September 23, 2010."**

## SUMMARY JUDGMENT

{¶ 16} First, appellant argues that the trial court erred in granting appellee partial summary judgment as to appellant's claims for defamation and tortious interference.   Even assuming appellee made a defamatory statement that tortiously interfered with appellant's business relationship with Toyota, appellee, nevertheless, is immune from liability due to its qualified privilege of a common business interest with Toyota.   Thus, we affirm the trial court's grant of partial summary judgment.

{¶ 17} Where a plaintiff establishes a prima facie case of defamation or tortious interference, the defendant may invoke a qualified privilege defense. *A & B-Abell Elevator Co., Inc. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 15, 1995-Ohio-66, 651 N.E.2d 1283; *Daubenmire v. Sommers*, 156 Ohio App.3d 322, 2004-Ohio-914, 805 N.E.2d 571, ¶118.   Statements between parties concerning a common business

interest may be protected by a qualified privilege. *Evely v. Carlon Co., Div. of Indian Head, Inc.* (1983), 4 Ohio St.3d 163, 165, 447 N.E.2d 1290. Generally, a communication is qualifiedly privileged when it is "'made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty * * * if made to a person having a corresponding interest or duty, even though it contains matter which, without this privilege, would be actionable [.]'" *Hahn v. Kotten* (1975), 43 Ohio St.2d 237, 246, 331 N.E.2d 713. The elements needed to prove a privilege are "'good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only.'" Id.

{¶ 18} Assuming without deciding that appellant is able to demonstrate a claim for defamation or tortious interference, we nevertheless affirm the judgment of the trial court granting appellee's partial summary judgment, because the evidence indisputably establishes that appellee's communications to Toyota are qualifiedly privileged. The statements to Toyota that an investigation revealed appellant overcharged Toyota for moving services were made in good faith. Toyota contracted with appellee to audit the moving services provided to Toyota transferees. During its routine examinations of the billing of appellant's services, appellee noticed some unusual frequency in

the occurrence of long carries, shuttle usage, unpackaging charges, and stair carries without authorization. In response, it conducted its own investigation, which entailed contacting a number of Toyota's transferees to inquire about the charges. This investigation revealed a pattern of overcharging. Next, appellee, at the behest of Toyota and in an effort to be thorough and impartial, hired an outside consulting firm, RIS, to review its findings. RIS's independent review also indicated appellant was overcharging Toyota. There can be no dispute that appellee, during the proper occasion, made the limited-in-scope publication to Toyota on a subject matter that it had interest, right and duty to speak. Appellee had a contractual relationship with both appellant and Toyota and was hired by Toyota for the specific purpose to verify these charges. Accordingly, appellee possessed a qualified privilege to make this statement to Toyota.

{¶ 19} Once a defendant demonstrates the existence of the qualified privilege, a plaintiff can only prevail upon a showing of actual malice. *Hanley v. Riverside Methodist Hosp.* (1991), 78 Ohio App.3d 73, 81, 603 N.E.2d 1126. A statement is made with actual malice if the speaker knew it was false or acted with reckless disregard to whether it was false. *Kremer v. Cox* (1996), 114 Ohio App.3d 41, 682 N.E.2d 1006. Reckless disregard for the truth is more than mere negligence. *Kremer*, supra. The plaintiff must

demonstrate that the defendant was highly aware of the probability of falsity. *Jacobs v. Frank* (1991), 60 Ohio St.3d 111, 115, 573 N.E.2d 609. The subjective belief of the speaker must be considered in determining whether a statement was made with actual malice. *Lakota Loc. School Dist. Bd. of Edn. v. Brickner* (1996), 108 Ohio App.3d 637, 649, 671 N.E.2d 578.

{¶ 20} In this case, the record is void of any evidence indicating actual malice by appellee. Appellant continually argues that it did not overcharge Toyota. The relevant inquiry, however, is not whether appellant overcharged Toyota, but the subjective intent of appellee, i.e., whether appellee told Toyota that appellant was overcharging Toyota when it knew, as a matter of fact, that overcharging was not occurring.

{¶ 21} Here, the evidence demonstrates that at all times, both prior to and after making the statement to Toyota, appellee reasonably believed appellant was overcharging Toyota. Appellee conducted its own review of the charges, contacted transferees, and hired an independent third-party, RIS, to investigate whether appellant overcharged Toyota. Such actions do not indicate a knowledge that the statement was false. Nor do these actions indicate a reckless disregard for the truth. In fact, appellee went to great lengths to verify its findings and did so in a strategic and careful manner. Accordingly, we find no actual malice. The trial court did not err in

granting appellee summary judgment as to appellant's claims for defamation and tortious interference.

## DISCOVERY

{¶ 22} In its second, third, and fourth assignments of error, appellant makes a number of arguments concerning discovery issues. First, appellant asserts that Exhibits 19 and 20, a spreadsheet and cover letter prepared by Robert Mills in response to the overcharging allegations, are inadmissible pursuant to Evid.R. 408 as offers to compromise. Appellee presented these documents in its motion for summary judgment to establish that appellant admitted to overcharging Toyota for the moving services, thereby establishing the defense of truth to the defamation action. Such information is irrelevant. It goes to the falsity element in a defamation action or the intentional interference element of tortious interference claim. We have already determined that appellee possesses a qualified privilege rebutting any prima facie case of defamation or tortious interference.

{¶ 23} The same holds true for the remaining discovery issues presented in appellant's second, third, and fourth assignments of error. In each of these assigned errors, appellant argues that, had the decision of the trial court been different concerning the discovery issues, appellant would have had evidence either excluded or admitted demonstrating that appellant did

not overcharge Toyota.  Again, because we find that appellee possessed the qualified "common business interest" privilege, we find any such arguments irrelevant to the outcome of summary judgment.

## MOTIONS FOR RELIEF FROM JUDGMENT

{¶ 24} In its last two assignments of error, appellant argues that the trial court erred in denying its two Civ.R. 60(B) motions to vacate the summary judgment award.  Appellant argues it is entitled to relief under Civ.R. 60(B)(1) and (5).  A review of the record indicates the contrary.

{¶ 25} We review the trial court's decision on a motion to vacate for abuse of discretion. See, e.g., *Rose Chevrolet, Inc. v. Adams* (1988), 36 Ohio St.3d 17, 20, 520 N.E.2d 564.  To prevail on a motion for relief from judgment pursuant to Civ.R. 60(B), the movant must demonstrate: (1) a meritorious claim or defense; (2) entitlement to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) timeliness of the motion.  *GTE Automatic Elec., Inc. v. ARC Indus., Inc.* (1976), 47 Ohio St.2d 146, 351 N.E.2d 113, paragraph two of the syllabus.

{¶ 26} Assuming arguendo that appellant has a meritorious claim, we nevertheless find appellant is not entitled to relief pursuant to either Civ.R. 60(B)(1) or (5).  First, appellant asserts that it is entitled to relief from the partial summary judgment award pursuant to Civ.R. 60(B)(1) because the

trial court rendered excusable neglect when it issued its judgment entry on February 13, 2009 granting appellant only four days to respond to appellee's summary judgment motion. Appellant also argues that the entry mistakenly identifies appellant as "Defendant" and appellee as "Plaintiff." Appellant maintains it was confused and believed it had until February 27, 2009 to file its brief in opposition.

{¶ 27} The record reflects that appellant was present at a pretrial when the court made clear that it extended appellant's deadline to respond to appellee's summary judgment until February 17, 2009. Additionally, the order reads in its entirety:

{¶ 28} "Mills Van Lines Inc. motion for extension of time to respond to motion for summary judgment James A. Hofelich 0033009, filed 02/05/2009, is granted. Defendant shall file brief on or before 2/17/09. No extensions shall be granted for any reason.

{¶ 29} Plaintiff has until 2/27/09 to file a reply brief."

{¶ 30} Admittedly, the entry mistakenly refers to appellant as "Defendant" and appellee as "Plaintiff." After reading the entire entry, however, such mistake is minimal. Appellant's attendance at the pretrial would have clarified any misunderstanding. Nonetheless, appellant never filed any response to the motion for summary judgment by February 27, 2009.

Thus, we are uncertain as to whether any such error was not harmless. We find no excusable neglect warranting relief from judgment.

{¶ 31} Second, appellant argues that it is entitled to relief under the "'catch-all' provision" of 60(B)(5), which "reflects the inherent power of a court to relieve a person from the unjust operation of a judgment." *Caruso-Ciresi, Inc. v. Lohman* (1983), 5 Ohio St.3d 64, 448 N.E.2d 1365, paragraph one of the syllabus. Appellant asserts that it was not afforded access to a "dearth of evidence" needed to respond to appellee's summary judgment motion. We find the exact opposite.

{¶ 32} This case was filed in February of 2005. The trial court granted the parties' discovery deadlines on numerous occasions, ultimately extending the deadline until November 3, 2008. As this last deadline approached, appellant made no attempts to extend the discovery deadline. Then, on February 27, 2009, four years after the initiation of the lawsuit and more than three months after the discovery deadline lapsed, appellant filed a Civ.R. 56(F) motion for additional discovery following the filing of a motion for summary judgment. In light of appellant's laxadaisical approach to the discovery deadlines, any decision by the trial court to deny appellant's motion is completely within its purview and again relief from judgment is not appropriate.

{¶ **33**} Appellant's final two assignments of error are overruled and the judgment of the trial court granting appellee's partial summary judgment as to appellant's defamation and tortious interference claims are affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, JUDGE

MELODY J. STEWART, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR