OPINION
Appellant Douglas Baker appeals a summary judgment of the Tuscarawas County Common Pleas Court dismissing his complaint against appellees Robert Gerber and First Federal Savings Bank of Dover:
 ASSIGNMENTS OF ERROR ASSIGNMENT OF ERROR NUMBER ONE THE TRIAL COURT ERRED BY GRANTING THE APPELLEES' MOTION FOR SUMMARY JUDGMENT IN THAT THERE WERE GENUINE ISSUES OF MATERIAL FACT THAT THE STATEMENTS MADE BY THE APPELLEE, ROBERT GERBER, TO THE BOARD OF DIRECTORS OF APPELLEE, FIRST FEDERAL SAVINGS BANK OF DOVER, WERE DEFAMATORY AND WERE KNOWINGLY MADE BY APPELLEE, ROBERT GERBER, WITH ACTUAL MALICE.
 ASSIGNMENT OF ERROR NUMBER TWO THE TRIAL COURT ERRED IN THAT IT IGNORED THE LAW GOVERNING THE APPELLEE, FIRST FEDERAL SAVINGS BANK OF DOVER, ACTIONS IN THAT IT IS LIABLE FOR THE ACTIONS OF THE APPELLEE, ROBERT GERBER, BECAUSE IT DID NOT PERFORM AN INDEPENDENT INVESTIGATION BEFORE TELLING THE APPELLEE, ROBERT GERBER TO TERMINATE THE APPELLANT'S EMPLOYMENT FOR REASONS BASED SOLELY ON THE STATEMENTS OF THE APPELLEE, ROBERT GERBER.
Appellee Robert Gerber became President of appellee First Federal Savings Bank of Dover in 1992. On October 17, 2000, Gerber was appointed as Vice President and Chief Financial Officer of the bank. Appellant was hired by the bank as its Compliance Officer and Internal Auditor on March 20, 1993.
Mary Mitchell, On-line Coordinator for the bank, attended a seminar on sexual harassment in 1999. Gerber and Mitchell discussed the subject matter of the seminar in the presence of the Michelle Larkin, Vice President of Retail Lending. Larkin mentioned that they had a problem at the bank, and identified appellant as the problem. Larkin suggested that Gerber talk to certain female employees. Mitchell told Gerber that appellant's actions could be considered sexual harassment. Mitchell told Gerber that in 1993, she was cleaning a check filmer with a small vacuum. Appellant said to Mitchell, "Now you are the one that is in charge of blow jobs." She complained to her supervisor at the time, and reported the comment to Gerber. Mitchell further cited comments appellant made about how blouses fit female employees.
On November 11, 1999, Gerber spoke to several female employees concerning appellant's conduct. Linda Shott, an employee in the loan department, told Gerber that appellant told "off color" jokes and stories. Lauri Yanders told Gerber that on one occasion appellant came up behind her and grabbed her at the waist with both hands. On another occasion, Yanders told Gerber that appellant grabbed her at the waist with one hand in the hallway of the bank.
Also on November 11, Gerber presented appellant with a copy of his performance appraisal from October 29, to which he had added language that he had received information that a number of female employees had been spoken to or touched in ways that were not appropriate, and could be considered sexual harassment. The appraisal stated that Gerber had spoken with the female employees, and they confirmed the touching and inappropriate language, and considered the actions sexual harassment. The performance appraisal advised appellant that this type of behavior must be terminated immediately, and if it continued, his employment would be terminated.
On November 12, Gerber spoke to Leigh Ann Sincox, who reported that appellant used inappropriate language and told off-color jokes in her presence. She also stated that appellant winked at her in a flirtatious manner. Although she could not recall the exact words, she stated that on one occasion appellant said something to her which was quite offensive, and when she repeated the comment to her fiancé that evening, it upset him. She stated that when appellant came into the room which she shared with several other employees, she would turn her chair around and attempt to ignore him. She stated that she believed he was sexually harassing her.
On November 18, Gerber spoke with Suzanne Huls by telephone. She was home on maternity leave at the time of this conversation. She told Gerber that after she became pregnant, appellant would telephone her at the New Philadelphia office, where she was employed, from the Dover office, and ask her how the "twins" were doing. She understood the reference to be to her breasts. Appellant would ask her if she had enough milk to feed her baby. Appellant also recommended to her that she should have the doctor put in an extra stitch after having the baby.
On November 18, 1999, appellant made a written reply to the comments concerning his comments towards female employees, which were added to his performance evaluation. He stated that along with many of the employees, both male and female, he has told jokes or used language or expressions that he supposed could be considered as potential sexual harassment; however, he never had an employee tell him that a joke, language, or expression was offensive to them. He also denied that he ever knowingly touched another employee in an inappropriate or threatening manner. At his deposition, appellant admitted that some people could be offended by his jokes and consider it sexual harassment.
On November 24, at a meeting of the bank's executive committee, Gerber advised the Board members of the allegations made by female employees of the bank. The committee advised Gerber to seek legal counsel and take the matter to the Board of Directors.
At the December 8, 1999, meeting of the Board of Directors, Gerber reported to the full board what female employees had told him. The Board was of the opinion that termination was appropriate, but recommended that Gerber seek legal counsel before taking any action. Gerber consulted with an attorney, and at a meeting on December 15, he advised the Board that the attorney recommended that appellant be terminated. On December 15, 1999, Gerber terminated appellant's employment with the bank.
Appellant filed the instant complaint, alleging defamation against appellee Gerber, and alleging that the bank failed to conduct a proper investigation before terminating him based on Gerber's statements. Appellees moved for summary judgment. The court found that as to the claim for defamation, Gerber's communications to the Board were protected by a qualified privilege, as the statements were made while conducting an investigation regarding sexual harassment allegations. The court therefore found that as a matter of law, there was no disputed fact concerning the element of actual malice required to prove defamation, and he did not act with knowledge that the statements were false. The court accordingly granted summary judgment on count one of the complaint. The court further dismissed count two, finding there is no disputed fact as to the wrongful termination of appellant by the bank. The court dismissed the complaint in its entirety.
 I
Appellant argues that the court erred in granting summary judgment on his claim for defamation against appellee Gerber.
The elements of a claim for defamation are: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting to at least negligence on the part of the publisher; (4) either actionability of the statement irrespective of special harm, or the existence of special harm caused by the publication.Akron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Services, Inc. (1992),81 Ohio App.3d 591, 601. A communication made in good faith on a matter of common interest between an employer and an employee, or between two employees concerning a third employee, is protected by qualified privilege. Hanly v. Riverside Methodist Hospital (1991), 78 Ohio App.3d 73,81. The elements need to establish such a privilege are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner to proper parties.Id. at 81. Once a defendant establishes a qualified privilege, a plaintiff can only prevail upon a showing of actual malice. Id. Actual malice is defined as acting with knowledge that the statements are false, or acting with reckless disregard as to their truth or falsity.Jacobs v. Frank (1991), 60 Ohio St.3d 111, paragraph two of the syllabus.
In Hardie v. Shady Hollow Country Club (June 17, 1996), Stark Appellate No. 1995CA00298, unreported, we considered a claim of defamation which is very similar to the instant case. In that case, two waitresses employed by the country club had made allegations of sexual harassment against the plaintiff. Later, they rescinded the allegations. We held that the plaintiff did not demonstrate that the allegations of sexual harassment were communicated by the country club in any setting other than during the investigation. The investigation was conducted in order to determine whether the accusations were valid, and the results of the investigation were made known only to those directly involved in the investigation. Accordingly, we determined that the communications were privileged. Id.
In the instant case, appellee Gerber began conducting an investigation after allegations of sexual harassment were brought to his attention by female employees of the bank. Appellant admits that he told lewd jokes, made sexual comments to employees, and touched an employee around the waist. There is nothing in the record to demonstrate that appellee Gerber communicated the allegations of the female employees in any setting other than investigation, to the proper parties inside the bank, and for the purpose of seeking legal counsel before terminating appellant's employment.
In his brief, appellant appears to argue that because several of the women testified by deposition that they did not believe the comments amounted to sexual harassment, and they were not demeaned or offended, the statements accusing him of sexual harassment were known by appellee to be false, and therefore made with actual malice. This claim is without merit. The instant case involves a claim of defamation, and is not a sexual harassment case. Therefore, the personal opinion of the women as to whether the charges rose to the legal definition of sexual harassment is not relevant to the issue of defamation. As found by the trial court, and as stated by this court in Hardie, supra, while conducting an investigation regarding sexual harassment allegations, appellee did not know whether the statements were true or false until completing the investigation. Therefore, he did not act with knowledge that the statements were false. In fact, several of the employees testified by way of deposition they believed the conduct constituted sexual harassment, and the record is uncontroverted that the matter was brought to appellee Gerber's attention as a sexual harassment investigation.
The first assignment of error is overruled.
 II
Appellee argues that the court erred in dismissing his claim that the bank did not properly investigate appellee Gerber's statements concerning sexual harassment before terminating appellant's employment with the bank.
It is undisputed that appellant was at all times an employee-at-will. An at-will-employee may be terminated for any reason not contrary to law. Mers v. Dispatch Printing Company (1985), 19 Ohio St.3d 100. Appellant has not presented evidence that any of the exceptions to the employment-at-will doctrine applied. Because he was an employee-at-will, appellant could have been terminated for a good reason, bad reason, or no reason at all. DeCavitch v. Thomas Steel StripCorp. (1990), 66 Ohio App.3d 568, 571. Therefore, the bank had no duty to conduct an investigation to verify the allegations as reported to them following appellee Gerber's investigation.
The second assignment of error is overruled.
The judgment of the Tuscarawas County Common Pleas Court is affirmed.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Tuscarawas County Common Pleas Court is affirmed. Costs to appellant.
By GWIN, P. J., FARMER, J., and WISE, J., concur.