APPELLANT BIGLER'S APPEAL {¶ 160} I dissent from the majority's analysis and disposition of Bigler's first assignment of error. In Bigler's first assignment of error, he contends the trial court erred in failing to grant his motion for judgment notwithstanding the verdict. Bigler argues Waters' claim for intentional infliction of emotional distress was filed beyond the applicable statute of limitations as the claim was actually premised upon the assault and battery which took place at Bentley's. Because the applicable statute of limitations for intentional infliction of emotional distress based solely upon an assault and battery is one year, Bigler maintains the trial court erred in permitting the claim to proceed. I disagree.
 {¶ 161} This assignment of error is predicated upon the trial court's denial of Bigler's directed verdict and the trial court's denial of Bigler's motion for judgment notwithstanding the verdict.
 {¶ 162} Under Civ.R. 50(A) and (B), the standard of review of a ruling on a motion for a directed verdict and a motion for judgment notwithstanding the verdict is the same. Posin v. A.B.C. Motor CourtHotel, Inc. (1976), 45 Ohio St.2d 271, 344 N.E.2d 334, 74 O.O.2d 427. ThePosin court set out that standard as follows:
 {¶ 163} "The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions." Id. See, also, Pariseau v. Wedge Products, Inc. (1988), 36 Ohio St.3d 124, 127, 522 N.E.2d 511; Strother v. Hutchison
(1981), 67 Ohio St.2d 282, 423 N.E.2d 467, 21 O.O.3d 177. This "reasonable minds" test calls upon a court to determine only whether there exists any evidence of substantial probative value in support of the claims of the non-moving party. Wagner v. Roche Laboratories (1996),77 Ohio St.3d 116, 119-120, 671 N.E.2d 252. Our review of the trial court's disposition of these motions is de novo.
 {¶ 164} Bigler maintains the Bentley's incident is subject to a one year statute of limitations for assault and battery as set forth in R.C. 2305.111. However, Waters claims her intentional infliction of emotional distress claim is premised on her claim of sexual harassment and the hostile work environment Bigler helped to create.
 {¶ 165} In Johnson v. Cox (Mar. 28, 1997), Adams App. No. 96CA622, unreported, the Fourth District Court of Appeals addressed a similar situation. In Johnson, the plaintiff claimed sexual assault and battery, intentional and/or negligent infliction of emotional distress, sexual harassment, and loss of consortium. After reviewing Prosser Law of Torts (5 Ed. 1988 P.P.) 62 Section 12, the Fourth District agreed sexual harassment on the job was a form of intentional infliction of emotional distress. Therefore, the Johnson court found a claim of intentional infliction of emotional distress premised on sexual harassment was subject to a six year statute of limitations. I agree with the Fourth District's assessment.
 {¶ 166} Therefore, I turn my attention to whether Waters' claim of intentional infliction of emotional distress was premised on the alleged sexual assault, or was premised on the sexual harassment claim. Because this issue comes to us on the denial of Bigler's motions for a directed verdict, and a judgment notwithstanding the verdict, the review must be conducted in a light most favorable to Waters.
 {¶ 167} In her complaint filed April 18, 2000, Waters' first cause of action alleged Bigler engaged in a continuous course of conduct toward her constituting an intimidating, hostile or offensive work environment which had the effect of unreasonably interfering with her work performance. Waters alleged Allied's Aratification of, acquiescence to and/or active participation in Bigler's conduct constituted an intimidating, hostile or offensive work environment which had the effect of unreasonable interfering" with her work performance. Complaint at par. 20. From this language we conclude Waters alleged intentional infliction of emotional distress included the hostile work environment created by both Bigler and Allied.
 {¶ 168} At trial, the jury heard testimony about the initial sexual assault at Bentley's. Further, and specifically with regard to Bigler, the jury heard evidence, which, if believed, would support the claim that Bigler engaged in the intentional infliction of emotional distress through his sexual harassment as a continuing course of conduct which created a hostile work environment negatively effecting Waters' employment for the same reasons set forth in my discussion of Bigler's second assignment of error, infra. Accordingly, I would find the trial court appropriately denied Bigler's motions with regard to the statute of limitations.
 {¶ 169} I find appellant's claim was clearly pled and argued as an intentional infliction of emotional distress claim premised upon hostile work environment sexual harassment. Accordingly, I would find the six year statute of limitations applied.
 II. {¶ 170} I also dissent from the majority's analysis disposition of Bigler's second assignment of error.
 {¶ 171} In his second assignment of error, Bigler maintains Waters' intentional infliction of emotional distress claim failed as a matter of law because Waters was unable to present evidence sufficient to support a verdict on the claim. I disagree.
 {¶ 172} In Yeager v. Local Union 20 (1983), 6 Ohio St.3d 369,453 N.E.2d 666, the Ohio Supreme Court held that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress." Id. at syllabus paragraph one. In order to prove the claim, a plaintiff must show: (1) the defendant intended to cause emotional distress, or knew or should have known that the actions taken would result in serious emotional distress; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions proximately caused plaintiff's psychic injury; and (4) the mental anguish plaintiff suffered was serious. Hanly v. Riverside Methodist Hosp. (1991), 78 Ohio App.3d 73,82.
 {¶ 173} Because I find appellant's claim for intentional infliction of emotional distress was based upon a claim of hostile work environment sexual harassment, I must determine whether the jury had evidence which, taken in a light most favorable to Waters, would support her claim. I find the jury did have such evidence.
 {¶ 174} Unlike a discrete employment discrimination charge, hostile work environment claims are different in kind from discrete acts. In National Railroad Passenger Corp. v. Morgan (2002),122 S.Ct. 2061, 536 U.S. 101, 153 L.Ed.2n 106, the United States Supreme Court stated:
 {¶ 175} "* * * Their very nature involves repeated conduct. See 1 B. Lindemann P. Grossman, Employment Discrimination Law 348-349 (3d ed. 1996) (hereinafter Lindemann) ("The repeated nature of the harassment or its intensity constitutes evidence that management knew or should have known of its existence"). The "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. See Harris v.Forklift Systems, Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295
(1993) ("As we pointed out in Meritor [Savings Bank, FSB v. Vinson,477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986),] `mere utterance of an . . . epithet which engenders offensive feelings in a employee,' ibid. (internal quotation marks omitted) does not sufficiently affect the conditions of employment to implicate Title VII"). Such claims are based on the cumulative affect of individual acts.
 {¶ 176} "* * *In determining whether an actionable hostile work environment claim exists, we look to "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id., at 23, 114 S.Ct. 367.* * *" Id. at 2073-2074.
 {¶ 177} Further, in Hampel v. Food Ingredients Specialties89 Ohio St.3d 169, 2000-Ohio-128, the Ohio Supreme Court held:
 {¶ 178} "Harassment "because of * * * sex" is the sine qua non for any sexual harassment case. But harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex." Oncale, supra, 523 U.S. at 80, 118 S.Ct. at 1002,140 L.Ed.2d at 208. As Professor Larson points out, the term "sexual," as used to modify harassment, "can refer both to sex as the immutable gender characteristic and to sex as describing a range of behaviors associated with libidinal gratification." 3 Larson, Employment Discrimination (2 Ed. 2000) 46-34, Section 46.03[4]. Thus, actions that are simply abusive, with no sexualelement, can support a claim for sexual harassment if they are directedat an employee because of his or her sex. Simply put, "[h]arassmentalleged to be because of sex need not be explicitly sexual in nature."Carter v. Chrysler Corp. (C.A.8, 1999), 173 F.3d 693, 701. (Emphasis added).
 {¶ 179} I find there was sufficient evidence from which the jury could reasonably find, when taking that evidence in a light most favorable to Waters, Bigler had engaged in extreme and outrageous conduct over a course of time, in which he either intentionally or recklessly caused serious emotional distress to Waters.
 {¶ 180} The jury heard testimony Waters' employment began with her supervisor telling her she looked good in her jeans and joking that he was her boyfriend. Thereafter, there was the incident at Bentley's. When Waters returned to work, she testified Bigler looked her up and down several times a day and gave her dirty looks.
 {¶ 181} The jury also heard testimony Bigler had involvement in creating the terms of Waters' extended probationary period and ultimately recommended her termination even though at the time he was no longer her supervisor. Further, the jury heard testimony Bigler participated in delivering the admittedly false affidavit from Shawn Rose to management after Waters' first termination meeting. Again, at the time, Bigler was not Rose's direct supervisor and Bigler was to have no disciplinary input with regard to Waters. Rather, any infraction, (presumably including immoral conduct in fractions), were to handled by either Levi Miller or Don Stropki.
 {¶ 182} While I would agree with the majority isolated incidents of smirks, negative comments or dirty looks may not be sufficient to rise to the level of intentional infliction of emotional distress and/or hostile environment sexual harassment, I find there was more than sufficient evidence from sexual comments, to the alleged sexual assault, to his participation in Waters' termination, and to his participation in Allied's termination of Waters for immoral conduct to constitute outrageous behavior utterly intolerable in a civilized community.
 {¶ 183} Further, Waters testified these actions by Bigler and Allied caused her serious mental anguish for which she sought treatment. The defense expert, Dr. Kenny, testified on cross-examination to a reasonable degree of medical probability, the Acause of [Waters'] anxiety, panic and depression disorders [was] both the assault as well as Allied's treatment of her as well as any other stressors that were going on at that time. Tr. at 1608.
 {¶ 184} When taking these facts in a light most favorable to Waters, I see no error in the trial court' decision to overrule Bigler's motions.
 {¶ 185} I would overrule Bigler's second assignment of error.
 III. {¶ 186} I agree with the majority's analysis and disposition of appellant's third assignment of error.
 IV. {¶ 187} I concur in part and dissent in part from the majority's disposition of Bigler's fourth assignment of error. In light of my dissent in Bigler's first assignment of error, I must also dissent from the majority's conclusion Bigler's claim for a new trial concerning Waters claim for intentional infliction of emotional distress is moot. I would find Waters' intentional infliction of emotional distress claim was predicated on hostile work environment sexual harassment, as opposed to sexual assault. I would also find no abuse of discretion in the trial court's denial of Bigler's motion for a new trial on this issue.
 V. {¶ 188} I concur in the majority's disposition of Bigler's fifth assignment of error. However, to the extent the majority finds the damages awarded for intentional infliction of emotional distress to be moot, I would dissent.
 VI. {¶ 189} I concur in the majority's disposition of appellant's sixth assignment of error.
 ALLIED'S APPEAL {¶ 190} I concur in part and dissent in part from the majority's disposition of Allied's first assignment of error. I concur in the majority's analysis and disposition of Waters' claims for retaliatory discharge and hostile work environment sexual harassment. However, I dissent from the majority's disposition of Waters' claim for intentional infliction of emotional distress.
 {¶ 191} As in Bigler's appeal, the majority relies upon Doe v.First United Methodist Church, for its determination Waters' claim was truly premised upon acts of sexual abuse subject to a one year statute of limitations for assault and battery. In Doe, a young man sued a former choir director for battery, negligence, and intentional infliction of emotional distress. However, unlike the instant matter, all of the activity in Doe constituted sexual abuse. The complained of conduct constituted 200-300 separate occurrences of offensive sexual touching over a three year period. While the sexual assault precipitated a chain of events in the matter sub judice, I cannot find it is the sole basis of appellant's claim of intentional infliction of emotional distress.
 {¶ 192} The majority concludes Waters' claim for intentional infliction of emotional distress against Allied was predicated upon sexual assault, and therefore barred by the statute of limitations. Notwithstanding this assumption, the majority goes on to look at each of the individual incidents making up what it found to be sexual harassment. Looking at these incidents disjunctively, the majority concludes none of the incidents, in and of themselves, would rise to the level of outrageous behavior, but for the allegations of immoral conduct which were actually based on slander.
 {¶ 193} However, because I would find Waters' claim of for intentional infliction of emotional distress as it relates to Allied to be predicated upon sexual harassment, I would find all of the incidents, when taken together, constituted extreme and outrageous behavior. For that reason, I dissent from the majority's disposition of Allied's first assignment of error.
 {¶ 194} In Hampel v. Food Ingredients Specialties, Inc., supra, the Supreme Court set forth the elements of a hostile work environment claim:
 {¶ 195} "* * *
 {¶ 196} "2. In order to establish a claim of hostile-environment sexual harassment, the plaintiff must show (1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the "terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment," and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action." Id. at syllabus par. 1, 2.
 {¶ 197} While Adirty looks" alone may not be sufficient to create a sexually hostile work environment, the fact Bigler continued to attempt to intimidate Waters after the sexual assault and with the full knowledge of the human resources manager, and arguably the plant manager, could easily have created a sufficiently severe or pervasive effect on the terms and conditions of Waters' employment. As noted by the Supreme Court in Hampel, each and every incident of harassment does not have to be sexual in nature. Rather the trier of fact must view the totality of the circumstances in making its determination whether a sexually hostile work environment existed.
 {¶ 198} When taking the evidence in a light most favorable to Waters, I find there was ample evidence to support a claim of intentional infliction of emotional distress including the element of extreme and outrageous conduct. The jury heard testimony Jay Dummermuth threatened to fire Waters if she did not drop her criminal complaint, and that he did not change her shift or supervisor based upon the incident. The jury heard evidence John Dummermuth solicited statements supporting allegations of immoral conduct involving Waters. Waters was given two entirely different reasons on two separate occasions for her termination, the second time Allied's reason being she had engaged in prostitution on their premises. I find this evidence, if believed, clearly supports a claim of extreme and outrageous conduct. Accordingly, I would overrule this portion of appellant's second assignment.
 {¶ 199} Allied next contends Waters did not present specific scientific evidence to support her claim of severe emotional distress. Appellant claims the opinion offered by Waters' expert witness, Kim Mlinarik, a licensed social worker, did not contain the requisite certainty.
 {¶ 200} In order to state a claim, a plaintiff not only must establish intentional, reckless, or outrageous behavior, but also must establish serious emotional distress. Paugh v. Hanks (1983),6 Ohio St.3d 72, 78; Yeager, supra at 374.
 {¶ 201} The Ohio Supreme Court has held:
 {¶ 202} "* * *
 {¶ 203} "Serious emotional distress describes emotional injury which is both severe and debilitating. Thus, serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." Paugh, supra, paragraph three (a) of the syllabus. A non-exhaustive list of examples of serious emotional distress would include traumatically induced neurosis, psychosis, chronic depression and phobia. Paugh, supra at 78.
 {¶ 204} As to proof, the Ohio Supreme Court has held expert medical testimony can assist the trier of fact in determining whether emotional distress is serious. However," * * * lay witnesses who are acquainted with the plaintiff, may testify as to any marked changes in the emotional or habitual makeup that they discern in the plaintiff after the accident has occurred. * * *." Pugh, supra at 80. See Colton v. FordMotor Credit Co. (July 30, 1986), Lorain App. No. 3916, unreported. Case: Criss v. Springfield Tp. Excerpt from: 1988 WL 61055, *4 (Ohio App. 9 Dist.) to 1988 WL 61055, *5 (Ohio App. 9 Dist.)
 {¶ 205} At trial, the jury heard evidence Mlinarik worked for the hotline from which Waters sought care after the sexual assault and her second termination. Mlinarik testified Waters' work situation seemed to contribute to the symptoms of post traumatic stress disorder because she was in a situation where she had been exposed to stressors which had exacerbated the symptoms. She further testified Allied's actions could have aggravated preexisting anxiety depression or post traumatic distress disorder conditions Waters may have had. Mlinarik testified Waters came to her because she had been experiencing stress due to the past trauma and a work situation which was very upsetting to her. She told Mlinarik she had been having panic attacks which were interfering with her ability to work and with her personal relationships. Mlinarik explained Waters had difficulty maintaining a job for a period of time after the alleged attack at Bentley's and after being fired from Allied. Mlinarik opined Waters was suffering from post traumatic stress disorder, suffering from nightmares, recurrent thoughts of the experience, difficulty working around men, loss of interest in activities, withdrawal from social situations and paranoia.
 {¶ 206} Allied's own psychological expert, Dr. Kenny, also testified in order for a diagnosis for post traumatic distress disorder to be made, a patient must have suffered a life threatening event. Dr. Kenny testified Bigler's attack on Waters at Bentley's met that criteria. Further, Dr. Kenny testified, to a reasonable degree of medical probability, the Acause of her anxiety, panic and depression disorders is both the assault as well as Allied's treatment of her as well as any other stressors that were going on at that time." Tr. at 1608. The jury also heard Waters' testimony. Waters explained she fell into a deep depression after her experience at Allied. In order to seek treatment for her problems, she called a local hotline immediately after the criminal assault and then after her termination. Over the next two years, Waters went through fifteen jobs, and was unable to maintain employment because of her discomfort working with men and the fear she would be attacked again.
 {¶ 207} I find this evidence, when taken in a light most favorable to Waters, established Waters suffered serious emotional distress of such a nature that no reasonable person could be expected to endure it. I would overrule this portion of Allied's second assignment of error.
 {¶ 208} I concur in the majority's disposition of the remainder of Allied's first assignment of error.
 II. {¶ 209} I concur in the majority's disposition and analysis of appellant's second assignment of error. However, I would also note Allied makes absolutely no reference to the specific portions of the testimony of either Potts, Green, or Patterson, which Allied claims were admitted in error. Appellant states objections were made, but does not inform the court of the basis of these objections or of their location within the record. Pursuant to App.R. 16(A)(7), I would overrule this assignment of error.
 III. {¶ 210} I concur in the majority's disposition of appellant's third assignment of error. However, I find the statute does permit the recovery of punitive damages where a plaintiff demonstrates by clear and convincing evidence, A[t]he actions or omissions of [the] defendant demonstrate malice, aggravated or egregious fraud, oppression, or insult, or that defendant as principal or master authorized, participated in, or ratified actions or omissions of an agent or servant that so demonstrate[.]" R.C. 2315.21(B)(1) and (C)(2).
 {¶ 211} Because I find the trial court correctly stated the law, I would overrule appellant's assignment of error.
 IV. {¶ 212} I concur in the majority's disposition of Allied's fourth assignment of error. However, because I would also find the trial court did not err in overruling Allied's motions for new trial and for judgment notwithstanding the verdict on Waters' claims for hostile work environment sexual harassment, intentional infliction of emotional distress, and retaliatory discharge, I would find appellant's fourth assignment of error to be moot.
V., VI., VII.
 {¶ 213} I concur in the majority's analysis and disposition of Allied's fifth, sixth, and seventh assignments of error.
CROSS-APPEAL
 {¶ 214} I concur in the majority's disposition and analysis of Waters' sole assignment of error on the cross-appeal.
JUDGE WILLIAM B. HOFFMAN