[Cite as *Tyson v. Ohio Dept. of Rehab. & Corr.*, 2024-Ohio-1481.]

## IN THE COURT OF CLAIMS OF OHIO

| | |
|---|---|
| FRANK E. TYSON | Case No. 2021-00603JD |
| Plaintiff | Magistrate Robert Van Schoyck |
| v. | <u>DECISION OF THE MAGISTRATE</u> |
| OHIO DEPARTMENT OF<br>REHABILITATION AND CORRECTION | |
| Defendant | |

{¶1} Plaintiff, who at all times relevant was an inmate in the custody and control of defendant at the Richland Correctional Institution (RiCI), brings this action seeking monetary damages as a result of defendant allegedly disclosing his "medical and mental information without authorization". (Complaint, ¶ 6.) The case proceeded to trial before the magistrate on plaintiff's claims for the following: (1) the tort "for the unauthorized, unprivileged disclosure to a third party of nonpublic medical information that a physician or hospital has learned within a physician-patient relationship", first recognized in *Biddle v. Warren Gen. Hosp.*, 86 Ohio St.3d 395, 715 N.E.2d 518 (1999), paragraph one of the syllabus; and, (2) intentional infliction of emotional distress.

**FINDINGS OF FACT**

{¶2} Upon review of the evidence presented at trial, the magistrate finds as follows. Lorrie Perry is an employee of defendant serving in the position of Programs Administrator II at RiCI. Among other duties, Perry is the Prison Rape Elimination Act (PREA) Coordinator for RiCI, a role that includes, among other things, management of sexual assault allegations and oversight of transgender inmates. As part of her responsibilities as the PREA Coordinator, when Perry learns that an inmate has self-identified as transgender, she meets with the inmate to verify that they identify this way. If the inmate confirms this, Perry is required by defendant's PREA policy to refer the inmate to the prison mental health department, and that department is then required to

follow up with Perry about the matter.  Perry thereafter meets with inmates who identify as transgender every six months.

{¶3} On August 24, 2017, Perry met with plaintiff because he had recently told a unit manager at RiCI that he identified as transgender.  (He/him pronouns are used to refer to plaintiff in this decision, consistent with how he wished to be addressed at trial.) During their conversation, plaintiff confirmed to Perry that he identified this way.  Neither Perry nor the unit manager were medical or mental health professionals.  Pursuant to the department's PREA policy, Perry completed a Referral to Mental Health Services form that same day in which she documented her encounter with plaintiff and his identification as transgender, and noted that "A mental health referral and follow up is required per policy."  (Defendant's Exhibit A.)

{¶4} Cindy Miller is the Mental Health Manager at RiCI and is a licensed social worker.  In response to the referral from Perry, Miller met with plaintiff on September 1, 2017, to assess his transgender status and needs.  Miller made detailed progress notes from this encounter, including subjective and objective information and an assessment, and information about plaintiff's mental health and medical history was identified in this record as well.  (Defendant's Exhibit B.)  Separate from her progress notes, Miller followed-up with Perry as required by making a handwritten note onto a copy of the Referral to Mental Health Services form.  (Defendant's Exhibit A.)  Miller's note to Perry was simpler than the progress notes that she prepared.  Miller essentially confirmed in the note to Perry that she met with plaintiff but that he did not wish to discuss being transgender and that his "main focus is on seeing a different clinician." (*Id.*)  Perry, upon receiving this follow-up from Miller, kept the notated Referral to Mental Health Services form with her PREA records as confirmation that plaintiff had received the required assessment.

{¶5} In March 2018, plaintiff sent a request to an official at RiCI, Warden's Assistant Jennifer Haywood, for any records from 2017 to present relating to an alleged sexual assault of plaintiff in 2017.  Haywood was the employee at RiCI in charge of records requests.  In response to plaintiff's records request, Haywood asked Perry for records that she maintained pertaining to plaintiff and Perry sent her copies of several documents

that she kept for PREA purposes, including the notated Referral to Mental Health Services form.

{¶6} After compiling the records to be produced in response to plaintiff's request, Haywood attached them to an email that she sent to Clyde Spencer, Unit Manager of the housing unit where plaintiff was assigned at the time. Haywood instructed Spencer in the email message to deliver the attached records to plaintiff. Spencer printed the attached documents and delivered them to plaintiff without looking at their contents. One of the documents produced to plaintiff in response to his request was the notated Referral to Mental Health Services form. While plaintiff maintains that this document was disclosed to others and that he was consequently harmed because it set forth his transgender identification, it was not shown through credible evidence that the document or information was disclosed by defendant to any other persons.

**CONCLUSIONS OF LAW**

{¶7} "In Ohio, an independent tort exists for the unauthorized, unprivileged disclosure to a third party of nonpublic medical information that a physician or hospital has learned within a physician-patient relationship." *Biddle v. Warren Gen. Hosp.*, 86 Ohio St.3d 395 at paragraph one of the syllabus.

{¶8} The information at issue, i.e. plaintiff's transgender identification as set forth in the Referral to Mental Health Services form, in this case was not medical information that a physician or hospital learned within a physician-patient relationship. Perry, who was not a medical professional, learned directly from plaintiff that he identified as

transgender and she memorialized the information for purposes of defendant's PREA policy in the Referral to Mental Health Services form. When Miller later made a note on the form, it was to follow up with Perry, memorializing for purposes of PREA policy that she had the required meeting with plaintiff to assess his transgender status and needs but that he did not wish to discuss the matter. The fact of plaintiff's transgender identification, as set forth in the form, was thus not medical information that a physician or hospital learned within a physician-patient relationship. Consequently, this information cannot form the basis for the breach of confidence tort under *Biddle.*

{¶9} Furthermore, even if the information had been the kind on which the breach of confidence tort could be predicated, it was not established that there was an unauthorized, unprivileged disclosure of the information to a third party. Regarding any disclosure by Miller to Perry, Miller was not only authorized but required under PREA policy to follow up with Perry and confirm that she met with plaintiff regarding his transgender status. Regarding any disclosure to Haywood, as the official in charge of records requests at RiCI it was her responsibility to review records for their responsiveness to a request that plaintiff made regarding a sexual assault, which in this case included PREA records from 2017 that Perry maintained. Spencer's testimony that he did not review the contents of the documents he delivered to plaintiff was credible.

{¶10} In sum, plaintiff failed to prove his claim for the breach of confidence tort.

{¶11} Regarding plaintiff's claim for intentional infliction of emotional distress, in this case the underlying facts fall within the parameters of the breach of confidence tort and the claim is consequently subsumed by the breach of confidence tort. *See Biddle* at 409 (several causes of action raised by the plaintiffs in *Biddle*, including intentional infliction of emotional distress, were "either unavailable, inapplicable because of their respective doctrinal limitations, or subsumed by the tort of breach of confidence").

{¶12} For the sake of argument, even if plaintiff's intentional infliction of emotional distress claim were not subsumed by the breach of confidence tort, there can be no recovery because plaintiff failed to demonstrate by a preponderance of the evidence that defendant, through its employees or agents, intended to cause serious emotional distress or knew or should have known that their actions would result in serious emotional distress, nor was it shown that any conduct attributable to defendant was so extreme and

outrageous as to sustain such a claim.  *See Hanly v. Riverside Methodist Hosps.*, 78 Ohio App.3d 73, 82, 603 N.E.2d 1126 (10th Dist.1991) (intentional infliction of emotional distress claims require proof that "(1) defendant intended to cause emotional distress, or knew or should have known that actions taken would result in serious emotional distress; (2) defendant's conduct was extreme and outrageous; (3) defendant's actions proximately caused plaintiff's psychic injury; and (4) the mental anguish plaintiff suffered was serious").  The greater weight of the evidence demonstrates that any disclosure of the Referral to Mental Health Services form was made in a good faith effort to either comply with PREA policy and/or a records request made by plaintiff, not with the intention to do serious emotional harm to plaintiff.

## CONCLUSION

{¶13} Based upon the foregoing, it is recommended that judgment be entered for defendant.

{¶14} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i).  If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed.  A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

ROBERT VAN SCHOYCK
Magistrate

**Filed March 18, 2024**
**Sent to S.C. Reporter 4/18/24**