[Cite as *Peaks v. Supreme Court of Ohio*, 2012-Ohio-6321.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

ARITHA L. PEAKS

    Plaintiff

    v.

THE SUPREME COURT OF OHIO

    Defendant

Case No. 2011-07401

Judge Clark B. Weaver Sr.

DECISION

{¶ 1} On February 6, 2012, defendant filed a motion for summary judgment pursuant to Civ.R. 56(B). Plaintiff was granted leave to file a response on March 26, 2012, however, no response was filed. The motion is now before the court on a non-oral hearing pursuant to L.C.C.R. 4(D).

{¶ 2} Civ.R. 56(C) states, in part, as follows:

{¶ 3} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to

have the evidence or stipulation construed most strongly in the party's favor." *See also Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317 (1977).

{¶ 4} Plaintiff, an African-American female, began her employment with defendant on February 2, 2004, as a Buildings Operations Assistant. Plaintiff asserts that on numerous occasions between February 2 and March 9, 2004, Matthew Collins, a Caucasian male coworker, engaged in harassing and discriminatory behavior by calling her a man's name (Ben), by criticizing her work performance, and by speaking to her in an unprofessional manner. On March 9, 2004, Collins became agitated with plaintiff and threatened to "slap the shit out of" her. Plaintiff reported Collins' behavior to her supervisor, Vikkie Wilson, a Caucasian female, and Collins was ordered to leave the building. On March 10, 2004, defendant held a meeting with plaintiff and her coworkers to discuss the March 9, 2004 incident. Defendant terminated Collins' employment on March 12, 2004.

{¶ 5} In 2005, plaintiff complained to a coworker that she was being treated unfairly by Wilson. Plaintiff's complaints included not being offered opportunities to work overtime despite male coworkers being offered that opportunity, not being assigned to tasks that required heavy lifting, not being permitted to attend professional development classes, that Wilson was intercepting her e-mail account, and that Wilson retaliated against her by allowing construction work to be performed in her work area despite knowing that plaintiff had a severe dust allergy. In February 2005, defendant's human resources department conducted an investigation based upon plaintiff's complaints. After the investigation, Wilson was issued a written warning regarding the need for equitable assignment of tasks, the e-mail issue was resolved, and Wilson was required to attend training in the areas of communication and diversity.

{¶ 6} Plaintiff was provided with a copy of the investigative report on March 11, 2005. On March 17, 2005, plaintiff sought and received leave under the Family and

Medical Leave Act (FMLA ) for depression, anxiety, and insomnia, which she attributed to "extreme stress at work." On March 18, 2005, plaintiff submitted a letter to defendant's human resources department that detailed her criticisms of the investigative report and contained specific complaints about her treatment at work. Plaintiff's leave of absence was eventually extended and converted to disability leave that lasted for a period of five months.

{¶ 7} Before returning to work from disability leave, plaintiff contacted Jillian Anderson, human resources representative, and informed her that she refused to be supervised by Wilson again. In response, defendant created a position for plaintiff as a "Security Assistant" whereby plaintiff would be supervised by James Cappelli. Inasmuch as plaintiff's position was newly created, the human resources department worked with Cappelli to create a job description for plaintiff. Plaintiff returned to work as a Security Assistant on August 17, 2005, after her treating physician had reviewed the position description and released her to work with no restrictions.

{¶ 8} Plaintiff's duties in her new position included typing reports for managers, answering phones, and ordering office supplies. Other responsibilities were added to plaintiff's workload once the Security Advisory Committee was formed. Those duties increased when the committee began to meet on a regular basis. Due to her additional duties, plaintiff requested that her position be reviewed for possible reclassification. As part of the review, Anderson and Cappelli worked with plaintiff to determine what work she was performing and what was expected of her as a Security Assistant. Plaintiff underwent skills testing in November 2006, by the Department of Administrative Services (DAS) to determine her abilities, such as typing speed. Following poor results from the DAS testing, plaintiff was permitted to re-take the tests to see if her scores would improve. Plaintiff's scores did not improve, but Anderson and Cappelli worked with her to revise her position description and to determine the appropriate classification and pay grade for her set of duties.

{¶ 9} On February 16, 2007, plaintiff inquired about a job posting within the court for the position of Program Assistant and asked Anderson whether she could be reclassified into that position or whether she should apply for it. After Anderson responded to plaintiff's inquiry and informed her that she could apply for the position, plaintiff told Anderson that she liked where she was and that she liked being supervised by Cappelli, but that she needed to find a way to earn more money.

{¶ 10} On July 3, 2007, plaintiff contacted the Equal Employment Opportunity Commission. Eventually, plaintiff filed a charge of discrimination based upon race and disability, and also asserted a claim of retaliation. In the charge, plaintiff complained of unequal treatment due to events from January 27, 2006 through June 30, 2007, including: defendant's failure to conduct an employment evaluation of her in her new position; failure to place her in the same pay classification as a Program Manager; and a complaint about a cost of living increase she either did or did not receive on July 27, 2006.[1]

{¶ 11} On August 6, 2007, plaintiff received her employment evaluation for the period of April 2006 through August 2007. Cappelli authored the evaluation, which contained a number of recommendations with regard to areas that needed improvement. However, Cappelli recommended that plaintiff's position be reclassified as an Administrative Secretary. After plaintiff's position assessment was completed, on or about August 11, 2007, plaintiff's position was reclassified as an Administrative Secretary under Cappelli's supervision effective July 30, 2007. Plaintiff's title, classification, and salary were upgraded. Plaintiff's pay grade changed from level 12 to level 13, and her annual salary increased from $30,555.20 to $31,334.

{¶ 12} On August 12, 2007, plaintiff filed a charge of discrimination with the Ohio Civil Rights Commission (OCRC) based upon race and disability, and a claim of

retaliation based upon events from October 1, 2006 through June 29, 2007. In the OCRC charge, plaintiff stated that she had filed internal complaints in 2005 which resulted in a finding that she had been discriminated against; that beginning in October 2006, and continuing throughout her employment she had been subjected to different terms and conditions of employment and had been denied wage increases while similarly-situated white, non-disabled coworkers had been treated more favorably; and that she had been discriminated against based upon her race, disability, and in retaliation for previously engaging in protected activities.

{¶ 13} On May 30, 2008, plaintiff contacted the human resources department about finding a parking lot closer to the court to accommodate her walking impairment. On June 2, 2008, Monica Hunyadi, Director of Human Resources, provided plaintiff with information regarding possible parking alternatives. On June 3, 2008, plaintiff responded by informing Hunyadi that she would provide medical information as soon as possible.

{¶ 14} On August 27, 2008, plaintiff's EEOC charge was dismissed and she was issued a Notice of Suit Rights. Plaintiff sought and received disability leave effective October 10, 2008, for stress and anxiety. After obtaining several extensions, plaintiff applied for and was granted disability retirement effective July 31, 2009. Plaintiff's last day of active employment with defendant was October 9, 2008.

{¶ 15} Plaintiff asserts claims of employment discrimination in violation of both state and federal law on the basis of her race, gender, and disability, a claim of retaliation, violation of the Equal Pay Act, 29 U.S.C. 206, and intentional infliction of emotional distress. Defendant asserts that any of plaintiff's claims that arose prior to December 1, 2006, are barred by the applicable statute of limitations, and that it is entitled to judgment as a matter of law on any remaining claims. Defendant filed the

---

[1]It is not clear when plaintiff filed her EEOC complaint; however, the evidence shows that it was

depositions of plaintiff, Cappelli, and Anderson in support of its motion.  As noted previously, plaintiff failed to file a response to defendant's motion.

{¶ 16} Civ.R. 56(E) states, in part: "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party."

## I.  STATUTE OF LIMITATIONS

{¶ 17} R.C. 2743.16(A) provides, in part:

{¶ 18} "Subject to division (B) of this section, civil actions against the state permitted by sections 2743.01 to 2743.20 of the Revised Code shall be commenced no later than two years after the date of accrual of the cause of action or within any shorter period that is applicable to similar suits between private parties."

{¶ 19} On May 12, 2011, plaintiff filed her complaint, wherein she states in paragraph 5 that: "Plaintiff filed a charge of employment discrimination against Defendant with the United States Equal Opportunity Commission.  Plaintiff's Notice of Suit Rights was mailed on August 27, 2008 (Exhibit A).[2]  In observance of the Thanksgiving holiday, this Court was closed on Thursday and Friday, August 27 and 28, 2008.[3]  This action was originally filed within ninety (90) days from the date of Plaintiff's receipt of the Notice of Suit Rights."

{¶ 20} Construing the evidence most strongly in favor of plaintiff, the only reasonable conclusion is that plaintiff's original complaint was filed, at the latest, on

---

filed after July 3, 2007.
[2]Plaintiff's Exhibit A was not attached to plaintiff's complaint.  However, Defendant's Exhibit 40 contains a copy of plaintiff's Dismissal and Notice of Rights dated August 27, 2008.

December 1, 2008. Therefore, pursuant to R.C. 2743.16(A), any of plaintiff's claims that accrued prior to December 1, 2006, including her claims that male employees were hired at a higher pay grade than she was in 2004, and any claims regarding her treatment by Wilson, are time-barred and defendant is entitled to judgment as a matter of law on those claims. The court shall consider plaintiff's claims that arose during her employment from December 1, 2006, forward.

## II. EMPLOYMENT DISCRIMINATION

{¶ 21} R.C. 4112.02 provides, in pertinent part, that: "It shall be an unlawful discriminatory practice: (A) For any employer, because of the race, * * * sex * * * [or] disability * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

{¶ 22} In Ohio, "federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000(e) et seq., Title 42, U.S. Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112." *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.*, 66 Ohio St.2d 192, 196 (1981).

{¶ 23} Plaintiff asserts that she was treated less favorably than other of defendant's employees because of her race, gender, and/or disability. Absent direct evidence of discriminatory intent, Ohio courts resolve claims of disparate treatment using the evidentiary framework established by the Supreme Court of the United States in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792. *See Canady v. Rekau & Rekau, Inc.*, 10th Dist. No. 09AP-32, 2009-Ohio-4974, ¶ 22. "Under the *McDonnell Douglas* framework, a plaintiff bears the initial burden of establishing a prima facie case

---

[3]The court notes that the Thanksgiving holiday occurs in November, not August.

of discrimination. In order to do so, the plaintiff must present evidence that: (1) [she] is a member of a protected class, (2) [she] suffered an adverse employment action, (3) [she] was qualified for the position in question, and (4) either [she] was replaced by someone outside the protected class or a non-protected similarly situated person was treated better." *Id.* at ¶ 23.

{¶ 24} It is undisputed that plaintiff, as an African-American female, is a member of two protected classes. However, defendant asserts that plaintiff has not presented evidence that she suffered any adverse employment action, which is a required element of any employment discrimination claim.

{¶ 25} "Generally, an adverse employment action is defined as a material adverse change in the terms and conditions of employment." *Tessmer v. Nationwide Life Ins. Co.,* 10th Dist. No. 98AP-1278, 1999 Ohio App. LEXIS 4633 (September 30, 1999), citing *Kocsis v. Multi-Care Mgt.*, 97 F.3d 876, 885 (6th Cir.1996). Examples include termination of employment, demotion demonstrated by a decrease in wage or salary, a material loss of benefits, a job transfer resulting in a less distinguished title or significantly diminished responsibilities, failure to promote, or negative comments on surprise performance evaluations. *Fortner v. Kansas*, 934 F.Supp. 1252 (D. Kan.1996). The alleged retaliatory act must "affect the terms and conditions of employment." *Id.* quoting *Boyd v. Brookstone Corp. of New Hampshire, Inc.*, 857 F.Supp. 1568, 1572-73 (S.D. Fla.1994).

{¶ 26} In her deposition, plaintiff testified that when she filed her charge of discrimination in 2007, she felt that she had been performing the duties of a Program Assistant and should have been classified as such in 2005 when she returned to work after her leave of absence. Plaintiff testified that Megan Real, a Caucasian female, was a Program Assistant who was paid more than plaintiff, and that she performed the same duties as Real while she was working both as a Security Assistant and an

Administrative Secretary. Thus, plaintiff claims that the adverse employment action she was subjected to was not being paid the same as Real.

{¶ 27} In order to establish a prima facie case of discrimination based upon treatment of comparables, a plaintiff must show that the other persons referenced were comparable in all respects. *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir.1992). A "plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated'; rather, * * * the plaintiff and the employee with whom the plaintiff seeks to compare [herself] * * * must be similar in 'all of the relevant aspects.' The individuals with whom the plaintiff seeks to compare * * * [her] treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." (Citations omitted.) *Clark v. City of Dublin,* 10th Dist. No. 01AP-458, 2002-Ohio-1440, ¶ 23.

{¶ 28} Both Anderson and Cappelli testified via deposition that plaintiff's duties, when she began working under Cappelli's supervision, were not comparable to any other position in the court, inasmuch as the Security Assistant position was created for plaintiff so that she could return to work and not be supervised by Wilson per her request. However, Anderson and Cappelli also testified that when plaintiff's position was being reviewed for reclassification, they looked to other position descriptions to determine what plaintiff's job duties should be. Anderson stated that she reviewed Real's position description and communicated with Real to determine her duties as a Program Assistant. Anderson determined that Real, as a Program Assistant for the Advisory Committee on Technology and the Courts, had different job responsibilities than plaintiff did as a Security Assistant, and that although both plaintiff and Real performed some similar tasks, the two positions were not the same. Cappelli testified that a Program Assistant is required to have specialized knowledge of a particular

program; that plaintiff was not required to have specialized knowledge of the security field; and that plaintiff's position was mainly administrative support. In addition, Cappelli did not supervise Real. Construing the evidence most strongly in plaintiff's favor, the only reasonable conclusion to be drawn is that Real was not in a comparable position to plaintiff. Therefore, plaintiff's claim of racial discrimination with regard to any Program Assistant position fails as a matter of law.

{¶ 29} Plaintiff also testified that she felt she was being discriminated against on the basis of her race due to her belief that there were no African-Americans in "a higher paying status or program assistant [position] at the time." (Peaks' Deposition, p. 150, lines 8-10.) Plaintiff testified that she based her opinion on conversations with other African-American employees in the office "that I'll never be promoted or seen as anybody sufficient to the court because of my race." (Peaks' Deposition, p. 150, lines 17-20.) Other than her complaints that she was not paid the same as Real, plaintiff has not alleged that she suffered any adverse employment action related to her belief that she would not be promoted based upon her race. Indeed, Anderson testified that when plaintiff inquired about a job posting, Anderson informed her that she could apply for it. Plaintiff did not apply for the position. Construing the evidence most strongly in plaintiff's favor, the only reasonable conclusion is that plaintiff did not suffer any adverse employment action based upon her race. Therefore, the court finds that defendant is entitled to summary judgment as a matter of law on plaintiff's claims of racial discrimination.

{¶ 30} With regard to employment discrimination based upon sex, plaintiff asserts in her complaint that she was repeatedly harassed by Cappelli, a Caucasian male, during her employment. However, when asked in her deposition how she was harassed, she stated that she had a good working relationship with Cappelli. Under Ohio law "in order to establish a claim of hostile-environment sexual harassment, the plaintiff must show (1) that the harassment was unwelcome, (2) that the harassment

was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the 'terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment,' and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action." *Hampel v. Food Ingredients Specialties, Inc.,* 89 Ohio St.3d 169, (2000), paragraph two of the syllabus. Cappelli testified that although in the August 2007 employment evaluation he noted areas that plaintiff needed to improve upon, he also recommended that her title, classification and salary be upgraded.   Soon thereafter, those changes were implemented.  Construing the evidence most strongly in plaintiff's favor, the only reasonable conclusion is that plaintiff was not harassed by Cappelli.  Therefore, plaintiff's claims of hostile work environment sexual harassment as it relates to Cappelli fail as a matter of law.

{¶ 31} With regard to any claim for constructive discharge, "[c]onstructive discharge is not itself a cause of action, but rather a means of proving the element of an adverse employment action where the employee resigns instead of being fired." *Fernandez v. City of Pataskala*, S.D.Ohio No.  2:05-CV-75, 2006 U.S. Dist. LEXIS 82136 (Nov. 9, 2006).   "The test for determining whether an employee was constructively discharged is whether the employer's actions made working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign." *Mauzy v. Kelly Services, Inc.*, 75 Ohio St.3d 578, 1996-Ohio-265, paragraph four of the syllabus.  Plaintiff testified that she was required to perform more work than what was required of her in her position description when she worked both as a Security Assistant and later as an Administrative Secretary.   However, "even if one's job becomes significantly more difficult" as a result of an employer's action, that fact alone is insufficient as a matter of law constitute an adverse employment action. *Broska v. Henderson*, 6th Cir. No.  01-4013, 2003 U.S. App. LEXIS 13450 (June 30, 2003).

"Changes in employment conditions that result merely in inconvenience or an alteration of job responsibilities are not disruptive enough to constitute an adverse employment action." (Citations omitted.) *Mowery v. City of Columbus*, 10th Dist. No. 05AP-266, 2006-Ohio1153, ¶ 22. Plaintiff's assertion of too much work, standing alone, does not constitute an adverse employment action as a matter of law, and cannot support a claim of employment discrimination.

{¶ 32} With regard to her claims of disability discrimination, plaintiff testified that she felt she was being discriminated against due to an impairment of her left foot, and her stress and anxiety. Plaintiff testified that she had limitations on her capabilities, and that she felt that she was being "pushed to the limit," in that she was "overworked" from the day that she returned to work as a Security Assistant.

{¶ 33} Under Ohio law, an individual has a "disability" if he or she has "a physical or mental impairment that substantially limits one or more major life activities" of such individual. R.C. 4112.01(A)(13). To establish a prima facie case of disability discrimination pursuant to R.C. 4112.02, plaintiff must demonstrate: "(1) that he or she was disabled; (2) that an adverse employment action was taken by an employer, at least in part, because the individual was disabled, and; (3) that the person, though disabled, can safely and substantially perform the essential functions of the job in question." *Yamamoto v. Midwest Screw Products*, 11th Dist. No. 2000-L-200, 2002-Ohio-3362, ¶ 18, citing *Hazlett v. Martin Chevrolet, Inc.*, 25 Ohio St.3d 279, 281 (1986). Although plaintiff alleges that she was "overworked" as a Security Assistant due to her disability of anxiety and stress, she also testified that Dr. Clark, her treating psychologist, had released her to work as a Security Assistant with no restrictions. In addition, Anderson testified that she submitted plaintiff's Security Assistant position description to Dr. Clark for review before plaintiff was released to work.

{¶ 34} With regard to plaintiff's walking impairment, defendant responded to plaintiff's request to secure a nearby parking location. Furthermore, plaintiff testified

that she was never denied sick leave or vacation time during her employment, and she availed herself of FMLA leave. Plaintiff was also granted disability leave in 2005, 2008, and was granted disability retirement in 2009. Construing the evidence most strongly in plaintiff's favor, the only reasonable conclusion to be drawn is that no adverse action was taken against plaintiff based upon any disability. Therefore, defendant is entitled to summary judgment as a matter of law on plaintiff's disability discrimination claims.

## III. RETALIATION

**{¶ 35}** To establish a prima facie case of unlawful retaliation under Ohio law, the employee must establish: 1) that she engaged in a protected activity; 2) that she was the subject of an adverse employment action; and 3) that a causal link exists between the protected activity and the adverse action. *Mowery, supra*, at ¶ 21.

**{¶ 36}** Plaintiff asserts that she engaged in a protected activity by filing an EEOC complaint in 2007, and that she received a negative employment evaluation shortly thereafter.[4] However, as stated earlier, despite the negative comments contained in plaintiff's 2007 employment evaluation, Cappelli recommended that plaintiff be reclassified into a higher pay grade and she received a salary increase. Construing the evidence most strongly in plaintiff's favor, reasonable minds cannot conclude that Cappelli's evaluation resulted in any adverse employment action. *See Enowmbitang v. Seagate Tech., Inc.*, 148 F.3d 970, 973-974 (8th Cir.1998) ("an unfavorable evaluation is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment"). Accordingly, defendant is entitled to summary judgment as a matter of law on plaintiff's claim of retaliation.

---

[4]The court notes that plaintiff filed her charge with the OCRC after she had received a copy of her evaluation. Therefore, plaintiff cannot demonstrate that she engaged in a protected activity as a result of the OCRC charge.

## IV. WAGE DISCRIMINATION

{¶ 37} To establish a prima facie case of wage discrimination under the federal Equal Pay Act, a plaintiff must prove that: "an employer pays or paid different wages to employees of the opposite sex (or of different races), in an establishment when they are performing equal work on jobs which require equal skill, effort, and responsibility under similar working conditions. *See* Section 206(b), Title 29, U.S. Code." *Hollowell v. Society Bank & Trust*, 78 Ohio App.3d 574, 582 (6th Dist.1992). For the reasons stated previously with regard to plaintiff' claims about Real, reasonable minds can conclude only that defendant is entitled to summary judgment as a matter of law on plaintiff's claim of wage discrimination.

## V. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

{¶ 38} The elements of intentional infliction of emotional distress are that "(1) defendant intended to cause emotional distress, or knew or should have known that actions taken would result in serious emotional distress; (2) defendant's conduct was extreme and outrageous; (3) defendant's actions proximately caused plaintiff's psychic injury; and (4) the mental anguish plaintiff suffered was serious." *Hanly v. Riverside Methodist Hosp.*, 78 Ohio App.3d 73, 82 (10th Dist.1991).

{¶ 39} Construing the evidence most strongly in favor of plaintiff, the only reasonable conclusion is that any alleged conduct of defendant is not of the extreme and outrageous character required to prevail upon a claim for intentional infliction of emotional distress. *See Yeager v. Local Union 20*, 6 Ohio St.3d 369, 374 (1983). Accordingly, defendant is entitled to summary judgment as a matter of law on plaintiff's claim for intentional infliction of emotional distress.

{¶ 40} In sum, the court finds that no genuine issues of material fact exist and that defendant is entitled to judgment as a matter of law as to all of plaintiff's claims. Therefore, defendant's motion for summary judgment shall be granted.



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

ARITHA L. PEAKS

    Plaintiff

    v.

THE SUPREME COURT OF OHIO

    Defendant

Case No. 2011-07401

Judge Clark B. Weaver Sr.

JUDGMENT ENTRY

{¶ 41} A non-oral hearing was conducted in this case upon defendant's motion for summary judgment.  For the reasons set forth in the decision filed concurrently herewith, defendant's motion for summary judgment is GRANTED and judgment is rendered in favor of defendant.  All future events are VACATED.  Court costs are assessed against plaintiff.  The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
CLARK B. WEAVER SR.
Judge

cc:

Charles A. McKinney
137 North Main Street, Suite 618
Dayton, Ohio 45402

Linda L. Woeber
Special Counsel to Attorney General
2100 Society Bank Building
36 East 7th Street
Cincinnati, Ohio 45202-4722

Randall W. Knutti
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

002
Filed July 13, 2012
To S.C. Reporter January 16, 2013